Argued and submitted April 8, reversed and remanded with instructions
August 7, 1985

HOOKER,
*Appellant,*

*v.*

DUNSTER et al,
*Respondents.*

(81-1045; CA A32195)

704 P2d 515

Norman E. Harper, Newberg, argued the cause and filed the briefs for appellant.

Thomas W. McPherson, Portland, argued the cause for

respondents. With him on the brief was Rankin, McMurry, VavRosky & Doherty, Portland.

Before Richardson, Presiding Judge, and Warden and Rossman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff deeded residential property to defendant Marvin Dunster in February, 1981. It is undisputed that Dunster obtained the deed by fraud.[1] Shortly after the deed was delivered, Dunster falsely informed plaintiff that he had destroyed it. In April, 1981, Dunster met with Dennis Lowery, one of the officers of defendant Apt 2, Inc., to arrange a loan. Dunster presented Lowery with a copy of the unrecorded deed from plaintiff, a title report showing plaintiff as the owner of the property, that had been prepared in connection with an earlier unconsummated transaction in which Dunster had attempted to use the property,[2] and an appraisal report that, like other facts of which Apt 2 became aware, showed that the residence was occupied by tenants. Apt 2 never attempted to contact the tenants and made no other cognizable inquiry into the existence of plaintiff's continuing interest in the property. After Dunster's and Lowery's meeting, a transaction was structured under the auspices of defendant Transamerica through which Dunster deeded the house to his wife, defendant Katherine Dunster. She in turn executed a trust deed, naming Transamerica as trustee and Dunster as beneficiary. Dunster then assigned his interest in the trust deed to Apt 2. All of the instruments were recorded on April 23, 1981.

Shortly after plaintiff learned that her deed to Dunster had been recorded, she brought this action to cancel the two deeds, the trust deed and the assignment to Apt 2 of Dunster's interest in the trust deed. Dunster and his wife did not make a timely appearance, and an order of default was entered against them. However, the court did not enter a default judgment. After trial, the court entered a judgment denying all relief to plaintiff and ruling that Dunster's assignment of his interest in the trust deed "creates a valid and enforceable interest in favor of Apt 2, Inc. in the subject

---

[1] The appearing defendants base a number of arguments on the theories that plaintiff intended the deed to be used for the purposes of joint business ventures of hers and Dunster's and that plaintiff was slow to realize that Dunster had defrauded her. It is unnecessary for us to discuss those arguments in detail or to recite the details of the relationship between plaintiff and Dunster. It suffices to observe that Apt 2 does not argue that Dunster did not defraud plaintiff.

[2] In the course of the Dunster-Apt 2 transaction, a second title report was prepared by Transamerica, showing plaintiff to be the fee simple owner of the property as of April 16, 1981.

property." The basis for the ruling in Apt 2's favor was its affirmative defense that it had

> "* * * acted in good faith, and without knowledge that anyone other than Dunsters claimed any interest in the subject property."

Plaintiff appeals, and we reverse.[3]

Plaintiff's first assignment is that the court erred by not granting a default judgment against the Dunsters. Apt 2 responds that plaintiff was not entitled to a default judgment, because the relief she sought against them was "in rem" rather than "in personam" and

> "[t]he Oregon Supreme Court has held that the decree in a suit for cancellation of a deed operates *in personam* only when reconveyance by the Defendant is prayed for in the complaint and ordered by the court. Otherwise, the court's decree is strictly *in rem. Schleef v. Purdy,* 107 Or. 71, 80-81, 214 P. 137 (1923). * * *"

■ The quoted language on which Apt 2 relies pertained to a venue issue. It does not have even a remote bearing on whether plaintiff was entitled to a default judgment against the Dunsters, and she obviously was. The real point that Apt 2 is—or should be—attempting to make is that the nature of the relief plaintiff may obtain through a default judgment against the Dunsters is contingent on whether Apt 2 acquired any rights through the instruments plaintiff seeks to have cancelled.

■ ■ In her second assignment, plaintiff argues that the trial court erred by concluding that Apt 2 acted in good faith and without actual or inquiry notice that plaintiff claimed a continuing interest in the property. Plaintiff argues that, under *Webb v. Stewart,* 255 Or 523, 469 P2d 609 (1970), Apt 2 was on notice, and its failure to make appropriate inquiry defeats its defense of good faith and lack of knowledge. *See also Stevens v. American Savings Institution, Inc.,* 289 Or 349,

---

[3] Apt 2 and Transamerica appeared jointly in the trial court, and they appear jointly here. However, neither of plaintiff's assignments pertains directly to Transamerica, which was awarded costs and disbursements by the trial court. That award is automatically eliminated by our reversal of the judgment. For convenience, we will refer to the appearing respondents collectively as Apt 2.

613 P2d 1057 (1980); *Randall v. Lingwall,* 43 Or 383, 73 P 1 (1903).

In *Webb v. Stewart, supra,* the defendant Stewart fraudulently obtained a deed to the plaintiff's residence. He transferred the property to the defendant Cascadia Development Incorporated, which then executed a trust deed on the property to secure a loan from the defendant Wilson. The plaintiff brought suit to cancel the two deeds and the trust deed. The issue in the appeal was whether Wilson had acted in good faith and without knowledge or whether the fact that the plaintiff remained in possession of the residence put Wilson on notice of the plaintiff's interest in the property. The Supreme Court reached the latter conclusion, stating:

"\* \* \* [W]e adopt the rule that grantor's continued possession after the execution of a deed by him puts third persons upon inquiry as to the grantor's interest.

"It is well established that the possession of persons other than the grantor will put a purchaser upon inquiry as to the possessor's interest. As the court in *Groff v. State Bank of Minneapolis,* 50 Minn 234, 238, 52 NW 651 (1892) observed: 'there is no good reason for making a distinction between possession by a stranger to the record title and possession by a grantor after delivery of his deed. In either case the possession is a fact inconsistent with the record title, and, if possession by the stranger is sufficient to make it obligatory upon a purchaser to ascertain his right, possession by the grantor is a circumstance entitled to equal consideration.'

"Although there is more likelihood that the grantor's possession would be consistent with the unencumbered title in the grantee, there is still a sufficient possibility of the grantor retaining an interest in the property to warrant the imposition of a duty upon the purchaser to make inquiry. The fact that there are a substantial number of litigated cases in which the grantor in possession has a claim, indicates that inquiry will frequently disclose to the purchaser an adverse claim." 255 Or at 536-37. (Footnotes omitted.)

Apt 2 attempts to distinguish *Webb* or to demonstrate that the rule of that case should not apply here. Many of its arguments to that effect require no comment, except to note that some are based on factual distinctions that we find irrelevant to the existence of inquiry notice, and others are premised on the apparent misunderstanding that a duty of

inquiry is somehow discharged if the inquiry that was not made *might* not have revealed the truth if it had been undertaken.

Apt 2 *seems* to argue that the application here of the rule in *Webb,* where the grantor himself had retained possession, would be an extension of that rule. We think that the converse is closer to the truth. As the quoted passage indicates, it was the rule before *Webb* was decided that possession by persons other than the grantor gave rise to inquiry. In *Randall v. Lingwall, supra,* the court held that a tenant's possession was notice to a prospective purchaser of the landlord's interest. Apt 2 argues that *Randall*

"* * * long preceded *Webb v. Stewart,* which virtually rewrote Oregon law on the subject of inquiry notice from possession. [It is], therefore, of questionable value as precedent."

Plaintiff correctly points out that *Randall* was cited with approval in *Webb. See* 255 Or at 536, n 7 and text.

Apt 2 also argues that the *Webb* rule should not be extended to require inquiry by persons who are "merely * * * recipient[s] of a security interest in the property" as well as by prospective purchasers. Again, no extension is involved. The defendant Wilson in *Webb* held a security interest that did not differ in any material way from Apt 2's interest here.

We conclude that Apt 2 was on inquiry notice and that it conducted no inquiry.[4] We have considered Apt 2's estoppel, laches and other arguments and hold them to be without merit.

Reversed and remanded with instructions to enter judgment in accordance with plaintiff's prayer.

---

[4] By deciding this appeal solely on the basis of the *Webb* rule, we do not imply that there may not have been facts other than the tenants' possession that put Apt 2 on inquiry notice, if they did not provide Apt 2 with actual knowledge of plaintiff's interest and Dunster's fraud.