In the Matter of the ESTATE OF Carl HITE, Deceased.

Everette E. WOODRAL, Appellant (Defendant),

v.

CREDIT BUREAU OF GILLETTE, a Division of Professional Credit Services, Inc., a Wyoming corporation, individually and in its capacity as personal representative of the Estate of Carl Hite, Appellee (Plaintiff).

No. 91–112.

Supreme Court of Wyoming.

April 17, 1992.

Rehearing Denied May 26, 1992.

William Curley (argued), Gillette, for appellant.

Peggy Taylor Pfau and Wendy M. Martin (argued) of Daly, Anderson & Taylor, Gillette, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

CARDINE, Justice.

The question here presented is whether a judgment, claimed to have not been properly indexed, is a lien against real property which has priority over a bona fide purchaser for value. Although not specifically raised as issues by appellant, Everette E. Woodral (Woodral), we conclude it is neces-

sary to address such additional matters as whether the judgment which resulted in the lien was in a proper form, signed by the district court, and the potential effect of Wyoming's homestead exemption law.[1]

We reverse and remand with directions that the district court grant Woodral's motion to set aside the default judgment and further that the district court declare Woodral's quitclaim deed to have priority over the judgment lien of appellee the Credit Bureau of Gillette (Credit Bureau).

Woodral proposes these issues:

A. The District Court Erred in Finding Appellee's Judgment Lien Superior to Appellant's Ownership Interest in Certain Real Property Absent Proper Indexing.

B. Due Process Requires Notice to the World Where Lien Arises by Operation of Statute to Diminish Protected Property Rights.

The Credit Bureau provides this summary of the controversy:

I. The Credit Bureau of Gillette (Appellee) possesses a valid judgment lien that is superior to Everette Woodral's (Appellant) ownership interest in certain real property.

(a) Appellee's judgment lien attached to all real property of Mr. Hite within Campbell County on the date it was rendered pursuant to W.S. § 1–17–302.

(b) The District Court Clerk satisfied the requirements of W.S. § 1–16–307 when she entered the judgment against Carl Hite on her computer index.

(c) Appellant has no standing to argue that failure by the Clerk of Court to indicate page numbers on the physical judgment index causes a judgment lien to be invalid. The Appellant made no effort to check the District Court Clerk's judgment records and therefore was not damaged in any way by the manner in which the District Court Clerk entered the judgment against Mr. Hite.

The Credit Bureau sought to collect a debt of Carl Hite (Hite) assigned to it by Campbell County Memorial Hospital. The debt had been reduced to judgment on June 20, 1988. Woodral lived with Hite on the property in question during Hite's long bout with cancer, and it was during this time that Campbell County Memorial Hospital assigned Hite's unpaid hospital bill to the Credit Bureau for collection. On February 22, 1990, the Credit Bureau petitioned, and an order was granted, authorizing it to probate Hite's estate. Initially, Woodral filed a pro se creditor's claim against the Hite estate, asserting Hite had transferred all of his property to Woodral. The Credit Bureau rejected Woodral's claim by notice dated June 6, 1990. When it became evident that Woodral had received from Hite and recorded, on July 18, 1988, a quitclaim deed to the real property, the Credit Bureau filed a complaint seeking a declaration that its judgment, filed June 20, 1988, was a lien superior to Woodral's quitclaim deed.

Upon application of the Credit Bureau, default was entered against Woodral by the Clerk of the District Court because of Woodral's failure to answer the complaint. Woodral sought relief from the entry of default, and the Credit Bureau applied for default judgment.

The district court determined the entry of default should not be set aside. The district court also found the Credit Bureau had obtained a judgment against Hite on June 20, 1988, and that the judgment attached as a lien on Hite's real property on that date pursuant to W.S. 1–17–302 (1988).[2] In addition, the district court

---

1. **§ 1–20–101. Homestead exemption; right and amount.**
 Every resident of the state is entitled to a homestead not exceeding ten thousand dollars ($10,000.00) in value, exempt from execution and attachment arising from any debt, contract or civil obligation entered into or incurred.

*Also see Wambeke v. Hopkin,* 372 P.2d 470 (Wyo.1962) and *Altman v. Schuneman,* 39 Wyo. 414, 273 P. 173, 175 (1929).

2. **§ 1–17–302. When lien attaches to property; generally.**
 The lands and tenements within the county in which judgment is entered are bound for the satisfaction thereof from the first day of the term at which judgment is rendered, but judg-

found Woodral had received and recorded a quitclaim deed to the real property of Hite on July 18, 1988, and that prior to that date Woodral had examined the records of the county clerk and did not note therein the lien at issue here. Further, the district court rejected Woodral's assertion that the county clerk's indexing system did not comply with W.S. 1–16–307 (1988) [3] and that the district court had not signed the judgment which effected the lien (see appendix A). Hite was not represented by counsel in the proceedings which led to the Credit Bureau's judgment against him, and Woodral was either not represented or was represented by counsel who were providing him pro bono services.

We first address the issue of whether the judgment was signed and, if it was not signed, what effect that had on the Credit Bureau's lien. Wyoming Rules of Civil Procedure 58 provides:

(a) *Form and entry.*—In all cases, the judge shall promptly settle or approve the form of the judgment or order and direct that it be entered by the clerk. All judgments and orders must be entered on the journal of the court and specify clearly the relief granted or order made in the action.

(b) *Time of entry.*—A judgment or final order in any case shall be deemed to be entered whenever a form of such judgment or final order, signed by the trial judge, is filed in the office of the clerk of the court in which the case is pending.

If no such form of judgment or final order is signed by such trial judge in any case, then the actual entry of the judgment or final order on the journal of the proper court shall govern.

■■■ It is apparent from the face of the judgment that it was not signed. Wyoming Rules of Civil Procedure 58(b) does contemplate entry of an unsigned judgment. The judgment in this case does not have a date line or signature line. Absent the signature line or date line, it is difficult to determine that the document is, in fact, complete. The revised Wyoming Rules of Civil Procedure, adopted December 20, 1991 (effective March 24, 1992), no longer include a provision for entry of an unsigned judgment (W.R.C.P. 58(c)). Moreover, the only certification on the two-page (but not page-numbered) document, which includes the purported judgment, is on the second page which is a notice of a right to a hearing and not a part of the judgment itself. Wyoming Statute 1–16–301 (1988) [4] requires more. The better practice would be that only signed judgments be entered; but where unsigned judgments are entered, as here, compliance with the rules and statutes is especially significant because they are in derogation of common law rights. *See Reliance Ins. Co. v. Chevron U.S.A. Inc.,* 713 P.2d 766, 770 (Wyo.1986). The burden was on the Credit Bureau to ensure that its judgment was effective for its purpose of obtaining a lien on Hite's real prop-

---

ments by confession and judgments rendered at the same term in which the action is commenced shall bind the lands only from the day on which the judgments are rendered. All other lands as well as goods and chattels of the debtor are bound from the time they are seized in execution.

3. **§ 1–16–307. Index to judgments.**
(a) The clerk shall keep an index, direct and reverse, of all judgments, by the names of parties alphabetically arranged showing in separate columns the following:
(i) The name of the judgment debtor;
(ii) The name of the judgment creditor;
(iii) The amount of the judgment and the year and term when it was rendered;
(iv) The page of the journal on which it is entered;
(v) The volume and page of the final record;
(vi) The number of the suit;

(vii) The number and time of issue of the execution and satisfaction thereof when satisfaction has been made.
[NOTE: This statute has been subsequently amended.]

4. **§ 1–16–301. Judgments and orders to be entered in journal; recordation where real property affected.**
All judgments and orders must be entered in the journal of the court and specify clearly the relief granted or order made in the action. When *a judgment or order is made determining* any matter affecting the title to real property, a certified copy of the judgment or order shall be recorded in the office of the county clerk of the county in which the property is situate.
[NOTE: This statute has been subsequently amended.]

erty. With our decision here resting upon other grounds, we do not decide whether the Credit Bureau satisfied its burdens. Nor do we hold that, absent a signature, judgments are void; but we note this judgment provided an opportunity for spurious additions to it, since it has no natural ending point (see appendix). Trusting that we shall not again have occasion to review the validity of an unsigned judgment such as that at issue here (now that the revised Rules of Civil Procedure are in effect) and because another issue is dispositive, we simply recognize that each such case must be evaluated on the totality of its circumstances.

■ We next review the district court's finding that the clerk's index complied with W.S. 1–16–307. The district court conducted its own inquiry and determined the index card was only part of the information. The rest of the index was in the clerk's computer. We are in favor of modern methods of keeping records, such as the computer index at issue here. However, variation from the statutory requirements of indexing must meet the minimum requirements of the statute unless the legislature authorizes alternative methods for maintaining the index, or the method actually in use (*e.g.*, computer storage) is made readily and plainly available to the public and operates in such a manner as to fully comply with the governing statutes.

■ The record does not establish that the computer information was available to the public in general or, specifically, to Woodral. The district court did take judicial notice that the index card itself, the document to which the public has immediate access, contained only the page of the journal where the judgment is entered and a reference to the civil action which resulted in that judgment. The district court also researched the clerk's computer file and found the statutorily required information to be available in the computer. However, this judicially noticed "evidence" does not satisfy the obvious concern as to whether Woodral had meaningful access to this same data. We are not informed by the record what efforts are made to assist a lay person to further research the computer index. Absent such record information, we can only conclude that Woodral looked in the right place but the statutorily required information was not available. Had the clerk testified that all members of the public who make inquiry about the index (not just attorneys) are informed how the index works and that statutorily required information is available upon simple request, we would reach a different result. In essence, we place the burden of satisfying the information supplying requirements of W.S. 1–16–307 upon the clerk and not upon the citizenry. For example, if the index card contained a notation that the clerk will, upon request, provide the complete data by computer printout meeting the requirements of W.S. 1–16–307, that would be sufficient.

Recognizing that strict compliance with these statutes is required, we hold that, under the peculiar circumstances of this case, Woodral became a bona fide purchaser without notice of the Credit Bureau's lien when he recorded his deed to Hite's property. *See Kimbel v. Osborn*, 61 Wyo. 89, 156 P.2d 279, 287, 158 A.L.R. 1079 (1945); 10A George W. Thompson, *Commentaries on the Modern Law of Real Property* § 5307 (1957).

The record reflects Woodral was represented by counsel who was serving him on a pro bono basis in the latter stages of this case. The issue of Woodral's homestead rights was not raised by counsel or the district court. It is an issue of significant concern in this case (*see* fn. 1). Because we have held the Credit Bureau's judgment lien does not have priority over Woodral's quitclaim deed from Hite, we need not discuss this issue further.

We hold the district court erred in denying Woodral's motion to set aside the entry of default and remand to the district court with directions to set aside the default and enter judgment reflecting that Woodral's quitclaim deed to the Hite real property has priority over the Credit Bureau's judgment.

Reversed and remanded for further proceedings consistent with this opinion.

APPENDIX A