Argued and submitted October 2, 1992, affirmed March 3, 1993

Larry R. LEWIS
and Janet R. Lewis,
husband and wife,
*Respondents,*

*v.*

INVESTORS LEASED GROUP II,
an Oregon limited partnership,
*Defendant,*

*and*

Richard DICOB
and Douglas County Title Company,
an Oregon corporation,
*Appellants.*

(CV 89 0617; CA A70288)

848 P2d 113

Bennett H. Goldstein, Portland, argued the cause for appellants. With him on the briefs was Stoel Rives Boley Jones & Grey, Portland.

Jeffrey L. Pugh, Roseburg, argued the cause and filed the brief for respondents.

Before Richardson, Chief Judge, and Deits and Durham, Judges.

RICHARDSON, C. J.

## RICHARDSON, C. J.

Defendants Dicob and Douglas County Title Company (Douglas Title) appeal from a judgment reinstating a cancelled trust deed, of which plaintiffs are the beneficiaries, and giving it priority over Dicob's trust deed on the same real property. We affirm.

In February, 1987, plaintiffs purchased a high interest note from defendant Investors Leased Group II (ILG). The note was secured by a trust deed on the real property in question that was recorded in March. Lester Jones was the controlling principal of ILG, and also controlled Southern Oregon Mortgage, Inc. (SOMI). Plaintiffs were aware of Jones' control over both entities. As part of the transaction with plaintiffs, Jones induced them to execute two documents. The first, a "Request for Full Reconveyance," authorized Douglas Title to release plaintiffs' lien. The second, a "Holding of Satisfaction Documents," directed that Douglas Title as escrow agent

> "hold [the original note, request for full reconveyance and plaintiffs' trust deed] in a safe deposit box under your control until you are requested in writing by [SOMI], to surrender same unto said [SOMI]. This you are instructed to do without additional instructions on the part of the undersigned."

In October, 1987, Jones (through ILG) entered into a transaction with Dicob, in which he gave Dicob a trust deed to the same property. Jones promised Dicob that his trust deed would be a first lien against the property and, by use of the two documents executed by plaintiffs and acting through SOMI, he obtained the release of plaintiffs' trust deed by Douglas Title. Dicob's trust deed was recorded and, later, so was the reconveyance of plaintiffs' deed. Dicob had no *actual* knowledge of plaintiffs' interest, and plaintiffs had no knowledge at the time about the Jones-Dicob transaction or the events surrounding it.

After discovering the facts, plaintiffs brought this action, alleging that the documents through which their interest was reconveyed were obtained without consideration, that the reconveyance was made without their authority and that they had been defrauded by ILG. They further

alleged that Dicob's interest was inferior to theirs. ILG defaulted. As between plaintiffs and Dicob, the trial court concluded, in a post trial memorandum opinion:

> "In retrospect [plaintiff] Lewis acknowledges that he was aware of the contents and legal consequences of all the documents delivered to [ILG], and that these documents gave [ILG] apparent authority to represent the loan had been paid and to request [a] reconveyance.
>
> "* * * * *
>
> "Not only Lewis, but Dicob and Douglas [Title] trusted Lester B. Jones.
>
> "Lewis was negligent. However, I do not believe that the negligence of Lewis was excessive as measured by the standard enunciated in *Kern v. Hotaling*, [27 Or 205, 40 P 168 (1895)].
>
> "The result is that the [plaintiff] Lewis Trust Deed will be reinstated as of February 25, 1987."

■     Thus, the effect of the judgment was to restore the original priority of plaintiffs' trust deed and to give it preference over Dicob's. On appeal, Dicob does not argue that plaintiffs' deed should not be reinstated, but contends that their interest should be subordinate to his. Plaintiffs rely on *Holzmeyer v. Van Doren*, 172 Or 176, 139 P2d 778 (1943); *Kern v. Hotaling, supra; Pearce v. Buell*, 22 Or 29, 29 P 78 (1892); and similar cases, for the proposition, stated in *Pearce*:

> "No rule of law is better settled than if the holder of a mortgage take a new mortgage as a substitute for a former one, and cancel and release the latter in ignorance of the existence of an intervening lien upon the mortgaged premises, although such lien be of record, equity will, in the absence of the intervening rights of third parties, restore the lien of the first mortgage and give it its original priority. * * *
>
> "* * * * *
>
> "To restore the mortgage of Pearce as a lien upon the mortgaged premises for the amount due him prior and paramount to the [intervening] lien of Marks & Co., is but to prevent manifest injustice and hardship, and interferes with no superior intervening equities. The lien of Marks & Co. was obtained prior to the release of Pearce's mortgage, and therefore they have not in any way been misled by the discharge of the mortgage." 22 Or at 33.

As indicated in the trial court's opinion, the cited cases also define a "negligence" concept that modifies the original lienor's rights to the relief described in *Pearce*.

In our view, those cases are all but inapposite. Each of them involved a renogotiation under which prior security interests were released and new ones acquired, in ignorance of the fact that intervening liens had attached. This case presents a very different situation: The question here is not the status of a security interest that a creditor substitutes for one that clearly had a superior position before the substitution; rather, the question involves the status of plaintiffs' *original* security interest and the circumstances that affected its status.

More analagous than the cases on which plaintiffs depend is *Webb v. Stewart*, 255 Or 523, 469 P2d 609 (1970), on which Dicob relies. There, the seller of real property delivered an executed deed to the buyer before the latter had performed. The seller contended that he did not know what he was signing, and that it was understood that no deed would be delivered to the buyer until the purchase price was paid. The buyer recorded the deed and defaulted. In the meantime, he entered into a loan transaction with a third party and caused a trust deed against the property to be executed in the latter's favor.[1] The seller brought an action, seeking to have the deed and the encumbrance cancelled. The trial court granted the seller's request for cancellation of the deed, but held that the third party's lien remained a valid prior encumbrance. The Supreme Court remanded the second holding, on the ground that the seller's continued possession put the third party on inquiry notice of his interest. It concluded:

> "[W]e are of the opinion that plaintiff's conduct in placing the fully executed deed in the hands of the grantee was unreasonable under the circumstances. Those who wish to enter into real estate transactions in which title is to be retained until certain conditions of the bargain are met have available to them the escrow device as a method of protecting themselves and others. There is, of course, the risk that the escrowee will violate the escrow instructions and surrender

[1] The buyer acted with another individual and through a corporation. The facts about the involvement of those entities are not essential to an understanding of the case as it bears on our discussion.

the deed prematurely, but this risk is minimal and if a grantor puts his deed with a reputable escrowee, he does all that he can reasonably do to protect third persons and should have his interest protected if the escrowee violates his trust.

"If the grantor fails to use this available means of minimizing the fraudulent use of his deed, he should bear the loss *as against a purchaser who has no knowledge of the fraud or of facts which would put him on inquiry.*" 255 Or at 533. (Emphasis supplied.)

*See also Stevens v. American Savings Institution, Inc.*, 289 Or 349, 613 P2d 1057 (1980); *Hooker v. Dunster*, 74 Or App 636, 704 P2d 515 (1985).

Plaintiffs argue that, even under the principle stated in *Webb* and the other cited cases, Dicob's argument does not succeed, because he was on constructive notice of their recorded trust deed at the time of his transaction with Jones and, therefore, was constructively aware of facts that put him on inquiry of the fraud against plaintiffs. In *Webb, Stevens* and *Hooker*, the fact giving rise to inquiry was continued possession by the grantor or persons holding through the grantor. Constructive notice of recorded interests was not a factor in the decision of those cases. That is hardly surprising, however, because, in each of them, the acquisition or recording of title *from* the grantor constituted part of the scheme by which the grantor was defrauded.

In this case, Jones' fraud upon plaintiffs did not consist of the granting and recording of their trust deed, but of the events that culminated in its cancellation. That did not occur until after Dicob's transaction with Jones was consummated. Under the circumstances here, there is no reason why record notice was not sufficient to put Dicob on inquiry of plaintiffs' interest and Jones' fraud.

■ It is true that, under *Holzmeyer v. Van Doren, supra*, and the related cases on which plaintiffs rely, a senior lienor's right to retain first priority for substituted security is not defeated by ignorance of recorded intervening interests. However, the logic for that rule is that an intervening lienor loses nothing by the senior lienor's retention of the priority he held when the junior lienor acquired his interest. *See Rusher v. Bunker*, 99 Or App 303, 306-07, 782 P2d 170 (1989). Here, the shoe is on the other foot. The *senior* encumbrancer *does*

have something to lose if his pre-existing interest is subordinated. We conclude that the holder of a junior interest is not entitled to a windfall at the senior holder's expense when the holder of the junior interest is on record notice of facts that could lead to the disclosure of the fraud upon the holder of the senior interest.[2]

Dicob contends that, even if he had inspected the record, it would have led him back to Jones and to the discovery that Jones and SOMI had the apparent legal ability to defeat plaintiffs' recorded interest. However, that contention is mere speculation. It is just as likely that an inspection of the record would — and should — have caused Dicob to direct further inquiries to plaintiffs, the holders of the recorded interest. In *Hooker v. Dunster, supra,* we rejected the substantially identical contention that "a duty of inquiry is somehow discharged if the inquiry that was not made *might* not have revealed the truth if it had been undertaken." 74 Or App at 640-41. (Emphasis in original.)

The trial court did not err.

Affirmed.

---

[2] We do not imply that the principles we state are immutable. As we indicated in *Rusher v. Bunker, supra,* questions of priority and subordination, in equitable subrogation and related contexts, turn to some degree on the competing equities in specific cases. In this case, however, the equities do not balance strongly for or against plaintiffs or Dicob. Plaintiffs were highly instrumental in facilitating the fraud that Jones perpetrated on them; Dicob, on the other hand, failed to take a highly available precaution to discover the fraud on plaintiffs and to prevent the fraud against himself. Each of the parties has a valid claim to the court's equity, but neither's claim prevails decisively over the other's. Given that, the general principles set forth in the text are decisive.