Michael E. GROSE and Patricia A. Grose, husband and wife, Appellants (Defendants),

v.

Peggy SAUVAGEAU, Appellee (Plaintiff).

No. 96–75.

Supreme Court of Wyoming.

July 17, 1997.

Thomas E. Campbell of Hand & Campbell, P.C., Douglas, for Appellants.

Patrick M. Hunter, Casper, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN, and LEHMAN, JJ.

TAYLOR, Chief Justice.

Appellants challenge the district court's grant of summary judgment quieting title in favor of appellee. Appellants acknowledge that their quitclaim deed to the subject property was not without defects, but claim the district court erred when it determined that appellee's conduct did not preclude her claim of title. Despite the allegations of inappropriate conduct, appellants' failure to acquire or record a valid deed to the property necessitates the legal recognition of the quitclaim deed filed by appellee as a subsequent good faith purchaser without notice pursuant to Wyo. Stat. § 34–1–120 (1997).

Affirmed.

## I. ISSUES

Appellants, Michael E. Grose and Patricia A. Grose (the Groses), present the following issues for review:

    1. Whether the Court erred in quieting title in the subject property in Sauvageau.

    2. Whether Sauvageau had notice of Groses' interest but failed to inquire?

    3. Whether Sauvageau can be considered a "good faith" purchaser?

    4. Whether the defects in Groses' deed from Ryberg benefit Sauvageau?

Appellee, Peggy Sauvageau (Sauvageau), responds:

    1. Can a deed from a stranger in title, to wit the deed from Ryberg Const. Co.

to the Appellants, convey any interest in the property.

2. Do the Appellants have a right to reformation of a deed from a stranger in title when they paid no consideration for the property?

3. If the unrecorded deed from Ryberg Const. Co. to the Appellants was valid to convey an ownership to the property was the Appellee:
    (i) a bona fide purchaser;
    (ii) in good faith;
    (iii) without notice.

## II. FACTS

According to Mrs. Grose's affidavit submitted in support of summary judgment, the story began when the Groses became interested in obtaining land for their children's 4–H projects. In July 1991, Mrs. Grose went to the courthouse in Converse County, Wyoming to research several lots which were of interest to her family. She emerged with the name of "Ryberg Construction." The record does not explain how Mrs. Grose found this name, since it is undisputed that the record owner of the subject lot was H. Carl Ryberg. Mrs. Grose then contacted Mr. Ryberg via telephone and discussed two lots he owned in Rolling Hills which had been acquired by Converse County for back taxes in 1989. Mrs. Grose and Mr. Ryberg agreed that Mr. Ryberg would send two quitclaim deeds for the lots and the Groses would pay the back taxes. The lot which is the subject of this controversy, Lot 153, is located in Rolling Hills adjacent to the Groses' business property and between their business property and the land belonging to Sauvageau.

On July 26, 1991, the Groses paid the back taxes on Lot 153 and received a Certificate of Purchase. True to his word, Mr. Ryberg signed and sent a quitclaim deed. However, the quitclaim deed professing to transfer Mr. Ryberg's interest in Lot 153 had numerous deficiencies: it was undated; it incorrectly named Ryberg Construction Co. as the grantor; it lacked a description of the property; and it lacked a completed or dated notarization of Mr. Ryberg's signature. In addition, Mr. Ryberg's signature did not contain any reference to the relationship between Mr. Ryberg and the grantor, Ryberg Construction Co. Undaunted by these technicalities, Mr. Grose entered a description of the property and back-dated the documents to August 25, 1989 in order to reflect a date shortly after the tax sale to Converse County. The Groses made no attempt to record the deed or redeem the property.

The Groses built improvements on the property, including fences, a barn, and installation of water, as well as a riding arena and a corral. They seeded the property and informed the town council of their intent to plant trees. Unfortunately, the operation of the premises was not without incident.

In 1993, the Grose children inadvertently left one of the gates ajar, allowing several pigs to escape and roam through nearby properties. After the pigs were apprehended and returned by officers of the sheriff's department, the Groses were notified that Sauvageau believed that during their short-lived freedom, the pigs had routed Sauvageau's horses through a fence. Although skeptical about the guilt of their pigs, the Groses paid half of Sauvageau's veterinarian bill. This is the first incident in the record which portends the hostile relationship between the Groses and Sauvageau.

In August 1994, the Groses again had the misfortune of an errant swine seeking liberation through an open gate. This escape resulted in the Groses receiving a citation for having an animal at large. One week earlier, the Groses had been cited for exceeding the number of animals allowed on their lot. At a hearing held in September 1994 on the citations, the Groses eventually pled guilty to both charges and, under the judge's instruction to secure an animal variance for Lot 153, the Groses prepared an application and obtained the required signatures of adjacent landowners.

At the next regular Rolling Hills town council meeting, however, the Groses allege that Councilwoman Sauvageau was instrumental in preventing approval of their application. When the subject of the variance was raised, the Groses submitted their application for the Lot 153 variance and then informed the town council of their intent to

request another variance for their adjoining property in the future. At that point, the discussion regarding the current application was tabled. The Groses were then brought to task by Councilwoman Sauvageau regarding the legality of the water installation on the property. Later in the evening after the town council members met in executive session, the town council reconvened only to pass an emergency ordinance which expanded the variance ordinance to include an annual review of the application and the signed approval of all property owners within 500 feet of the land at issue. The requirements contained in the new ordinance gave Councilwoman Sauvageau the ability to veto the Groses' variance by withholding her signature.

Hostilities continued, and in November 1994 prior to Councilwoman Sauvageau's bid for re-election, Mrs. Grose penned a letter to the local newspaper "questioning some of the people running for council." Sauvageau was not re-elected.

Shortly thereafter, allegedly because "[t]he difficulties between [Sauvageau] and the Groses had become so bad," Sauvageau "determined to check on the ownership of the property, in the off chance that the Groses were mere lessees of the property." When Sauvageau inquired at the County Clerk's recording office, she discovered that the record owner of the property was H. Carl Ryberg. Upon contacting the County Treasurer's office, Sauvageau learned that the Groses held the property by virtue of a Certificate of Purchase. She then confirmed there had been no notice of application for a tax deed and subsequently hired legal counsel to investigate whether she could purchase and redeem the property. Sauvageau states that her purpose was to "acquire * * * a buffer lot between the [Groses] and their livestock, and [herself]."

On November 28, 1994, Sauvageau and Mr. Ryberg executed a contract to purchase Lot 153 for $50.00, with the agreement to pay an additional $200.00 if Sauvageau was successful in redeeming the property. In return,

Sauvageau received a quitclaim deed from Mr. Ryberg transferring all his interest in the property to Sauvageau. During these negotiations, Mr. Ryberg did not inform Sauvageau or her attorney about the quitclaim deed he previously had signed and sent to the Groses. Sauvageau freely admits, however, that her actions were secretive in hopes that the Groses would not be alerted and apply for a tax deed before she could redeem the property.

The next day, November 29, 1994, Sauvageau recorded her deed, paid Converse County the amount required by statute, and obtained a certificate of redemption. Sauvageau then demanded that the Groses vacate the property. The Groses refused, claiming ownership by virtue of the unrecorded quitclaim deed from Ryberg Construction Co., executed by Mr. Ryberg and dated prior to the deed recorded by Sauvageau.[1]

Sauvageau filed a quiet title and ejectment action. The Groses responded by denying Sauvageau's title and counterclaiming to quiet title. The Groses also counterclaimed for intentional infliction of emotional distress, for tortious interference with contract, and asserted a lien on the property for improvements. The parties then filed cross motions for summary judgment. The district court granted summary judgment quieting title in favor of Sauvageau, and dismissed the remaining counterclaims. After their motion for rehearing was denied, the Groses timely filed this appeal challenging only the district court's decision regarding title to the property.

### III. STANDARD OF REVIEW

Summary judgment is only to be granted on the joint showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. W.R.C.P. 56. A fact is material if proof of that fact would have the effect of establishing or refuting an essential element of a cause of action or a defense. *Hronek v. St. Joseph's Children's Home,* 866

---

1. It appears that the Groses contacted Mr. Ryberg after learning of the deed to Sauvageau, but Mr. Ryberg informed them he forgot he quit-claimed the property to them and refused to sign a corrected deed.

P.2d 1305, 1307 (Wyo.1994). The purpose of summary judgment is to eliminate the necessity of bringing the issues to a full trial, "permitting an end to unfounded claims and avoiding the heavy expense * * *." *Blue-jacket v. Carney*, 550 P.2d 494, 496 (Wyo. 1976). *See also England v. Simmons*, 728 P.2d 1137, 1141 (Wyo.1986). Summary judgment is a drastic remedy, and therefore, if the evidence is subject to conflicting interpretations, or reasonable minds might differ as to its significance, summary judgment is improper. *Weaver v. Blue Cross–Blue Shield of Wyoming*, 609 P.2d 984, 987 (Wyo. 1980). If the evidence in the record supports the summary judgment granted by the district court on any legal basis, however, we will affirm. *Century Ready–Mix Co. v. Campbell County School Dist.*, 816 P.2d 795, 799 (Wyo.1991).

In this case, the parties agree that the Groses were in possession of the property, that Sauvageau knew they were in possession, and that if Sauvageau had inquired of the Groses, the Groses would have told her of the quitclaim deed they had obtained from Mr. Ryberg. As the district court stated, "[t]he only questions are the legal conclusions to be drawn from these facts."

## IV. DISCUSSION

■ The Groses' claim that Sauvageau's failure to make direct inquiry of the Groses' interests, and her admitted efforts to acquire the property without notifying the Groses, defeats her status as a bona fide purchaser in good faith, and therefore, her entitlement to the property. Wyo. Stat. § 34–1–120 provides:

Every conveyance of real estate within this state, hereafter made, which shall not be recorded as required by law, shall be void, as against any subsequent purchaser or purchasers in good faith and for a valuable consideration of the same real estate or any portion thereof, whose conveyance shall be first duly recorded.

■ To prevail in a contest under Wyo. Stat. § 34–1–120, Sauvageau must show that she is a "bona fide purchaser," which is: (1) a

purchaser in good faith; (2) for a valuable consideration, not by gift;[2] (3) with no actual, constructive or inquiry notice of any alleged or real infirmities in the title; and (4) who would be prejudiced by the cancellation or reformation. *First Interstate Bank of Sheridan v. First Wyoming Bank, N.A. Sheridan*, 762 P.2d 379, 382 (Wyo.1988); *Crompton v. Bruce*, 669 P.2d 930, 935 (Wyo. 1983); *North Am. Uranium, Inc. v. Johnston*, 77 Wyo. 332, 316 P.2d 325, 328–29 (1957); *York v. James*, 60 Wyo. 222, 148 P.2d 596, 598–99 (1944).

### A. NOTICE

■ The purpose of the recording statutes is to provide protection for those diligent enough to conduct a search of title records. *First Interstate Bank of Sheridan*, 762 P.2d at 383. However, "[f]ailure to record a deed does not render it void where prior to the conveyance subsequent purchasers are put on due inquiry and with reasonable investigation the existence of the deed could have been determined." *Doenz v. Garber*, 665 P.2d 932, 936 (Wyo.1983) (*citing Soppe v. Breed*, 504 P.2d 1077, 1080 (Wyo. 1973)).

■ A subsequent purchaser must take "with[out] actual, constructive, or inquiry notice * * *." *First Interstate Bank of Sheridan*, 762 P.2d at 383. *See Matter of Estate of Hite*, 829 P.2d 1173, 1176 (Wyo.1992) and *Thomas v. Roth*, 386 P.2d 926, 929 (Wyo. 1963). Sauvageau did not have actual notice of the Groses' unrecorded quitclaim deed. Neither did she have constructive notice of the deed, since even if the Groses' deed was recorded, the improper acknowledgment defeats constructive notice. *Low v. Sanger*, 478 P.2d 60, 63 (Wyo.1970); *Torgeson v. Connelly*, 348 P.2d 63, 66 (Wyo.1959). The district court concluded, however, that the Groses' possession of the property put Sauvageau on inquiry notice which required her to inquire directly of the Groses as to their claimed interest in the property.

■ The district court relied on the concurring opinion of Justice Raper, Retired, in *Van Patten v. Van Patten*, 784 P.2d 218, 222

---

**2.** The parties do not dispute that Sauvageau paid valuable consideration for the property.

(Wyo.1989), wherein he quoted *Healy v. Wostenberg,* 47 Wyo. 375, 399, 38 P.2d 325, 333–34 (1934):

> "Possession of real property by a person other than the vendor is notice to the purchaser of whatever rights or interests, legal or equitable, in the fee which the occupant has or claims and which would be disclosed on a proper and reasonable inquiry of him. Indeed, such possession is notice of all facts in reference to the title which due and diligent *inquiry of the occupant* would disclose. Therefore possession is notice of the rights of those under whom the possessor claims."

(Emphasis added.) *See also* 58 Am.Jur.2d, *Notice,* § 21 (1989) and 66 C.J.S., *Notice,* § 11(c) (1950). The facts of that case, however, are easily distinguished from the undisputed facts in this record. In *Van Patten,* 784 P.2d at 222–23, Justice Raper, Retired, went on to state:

> No reasonable inquiry whatsoever was made to determine the occupants', appellants', claims of right. * * *
>
> * * *
>
> * * * Possession by others puts the subsequent claimant on notice and *requires reasonable investigation* of the rights of such possessors.

(Emphasis added.) We do not agree that a reasonable investigation requires direct inquiry of the occupant in every case.

■ Inquiry notice is based on the premise that the failure to make inquiry by someone with sufficient knowledge to create a duty to do so will be attributed to their own negligence. The loss resulting from such negligence will not be relieved in a court of equity. *North Am. Uranium, Inc.,* 316 P.2d at 329. While Sauvageau was well aware that the Groses had possession of the property and had made improvements upon it, she diligently searched the records only to discover that the Groses' possession of the property was entirely consistent with the rights of the record owner. Therefore, the Groses' possession of the property did not create a situation which would put Sauvageau on guard as to the possibility of an unrecorded instrument or an alternative claim to the property. Thus, there was not "sufficient knowledge" to create a duty to further investigate the Groses' claims.

■ Public policy requires that subsequent purchasers be able to rely on the title shown in public records. While in some cases a search of the record may not be sufficient, third-party possession of property constitutes inquiry notice to a subsequent purchaser only when "it is an 'actual, open, visible, and exclusive possession' inconsistent with the title of the record owner." *Nussbaumer v. Fetrow,* 556 N.W.2d 595, 598 (Minn.App.1996); *Clay Properties, Inc. v. Washington Post Co.,* 604 A.2d 890, 896 (D.C.App.1992). Since the Groses' possession of the property was fully explained in the public records, Sauvageau had no duty to search further.

## B. Good Faith

■ The Groses contend that "Sauvageau's claim to having acted in 'good faith' is destroyed by her own words:"

> The Defendants and I are not on good terms, and the less I speak to them the better. As such, when I wanted to determine what right they had to the property, I researched the real estate records and found that they were the holders of a certificate of purchase on the property, and that they could apply for a tax deed. I consulted with my attorney, and subsequent to such consultation determined that I would try to purchase the property and redeem it, hopefully before the Defendant's [sic] were able to get a tax deed. After investigation, I determined that I did not want the Defendant's [sic] to know I was interested in the property, since they might have been able to get a tax deed before I redeemed the property.

The term "good faith" is not defined in the statute. Prior Wyoming cases addressing the elements of a subsequent purchaser within Wyo. Stat. § 34–1–120 describe "good faith" as an element separate from that of "notice." *First Interstate Bank of Sheridan,* 762 P.2d at 382; *Crompton,* 669 P.2d at 935; *North Am. Uranium, Inc.,* 316 P.2d at 328–29; *York,* 148 P.2d at 598–99. The facts of

those cases, however, did not require the court to distinguish one from the other.

The Groses argue that "good faith" under Wyo. Stat. § 34–1–120 requires more than merely lack of notice, but cite to no supporting case law. Instead, they point to the definition of good faith as addressed in cases involving the implied covenant of good faith and fair dealing in contracts. *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211, 220 (Wyo.1994) (good faith excludes types of conduct which "violate community standards of decency, fairness or reasonableness"); *Cone v. Ivinson*, 4 Wyo. 203, 33 P. 31, 34 (1893), *aff'd*, 4 Wyo. 203, 35 P. 933 (1894) (good faith consists in an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of law). Unfortunately, the definitions of the duty owed to another party in a contractual relationship give little guidance in the context of the "good faith" required under a "race-notice" statute.

While we agree that Sauvageau's conduct was hardly a model of good sportsmanship, we do not believe her actions constitute "bad faith" removing her from the protection afforded by Wyo. Stat. § 34–1–120. The Groses do not allege that Sauvageau made representations upon which they relied in their claim to title. Neither do the Groses claim that Sauvageau's actions, prior to the time she recorded her deed, prevented them from attempting to record their deed or apply for a tax deed as contemplated by statute. Finally, there are no allegations or any illegal or fraudulent conduct. *See Lewis v. Investors Leased Group II*, 118 Or.App. 361, 848 P.2d 113 (1993) (prior mortgagees were entitled to priority over subsequently executed deed of trust in same property when mortgagor's controlling principal fraudulently obtained release of prior trust deed by escrow agent). Consequently, the Groses allege no affirmative actions which would preclude a finding of "good faith" under Wyo. Stat. § 34–1–120.

The Groses have been reimbursed in full with interest for the taxes which they paid for possession of the property. They also have an undisputed right to recover for the value of the improvements which they placed upon the property. As between the quitclaim deed held by the Groses and the deed recorded by Sauvageau, the latter must prevail.

## V. CONCLUSION

The Groses' third-party possession of the property was not contrary to the rights of the record title holder, and therefore Sauvageau had no "inquiry notice" requiring direct contact with the Groses regarding the basis of their claim to the property. The Groses raised no issue of material fact as to Sauvageau's good faith under Wyo. Stat. § 34–1–120. Summary judgment is affirmed.