Argued and submitted April 29, affirmed July 28, 1999

Peter D. GORZEMAN
and Bobbie Chloe Gorzeman,
husband and wife,
*Respondents,*

*v.*

Thomas Jerry THOMPSON,
*Appellant,*

*and*

Faye A. THOMPSON,
deceased.
*Defendant.*

(96-4270; CA A100938)

986 P2d 29

Thomas C. Howser argued the cause and filed the brief for appellant.

Karen C. Allan argued the cause for respondents. With her on the brief was Foster, Purdy, Allan, Peterson & Dahlin, LLP.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

.

## BREWER, J.

Defendant Thomas Jerry Thompson appeals from a judgment in favor of plaintiffs Chloe and Peter Gorzeman in this action for judicial foreclosure of a trust deed under which plaintiffs are the beneficiaries and defendant Faye Thompson was the grantor. Defendant[1] contends that certain findings of fact made by the trial court were not supported by the evidence and that the court erred in concluding that plaintiffs' trust deed was entitled to priority over defendant's deeded interest in the foreclosed property. For the following reasons, we affirm.

Chloe Gorzeman and defendant are the children of Faye Thompson. Peter Gorzeman is married to Chloe. Faye was engaged in various business ventures with defendant in Jackson County between 1970 and the early 1990s. They jointly owned the Royal Coachman Motel and sometimes resided together in living quarters at the motel. In 1988, Faye purchased and moved into a residence in Shady Cove referred to as the Heather Lane property. Defendant also moved into the Heather Lane residence in order to help Faye renovate the property. After she acquired title to the Heather Lane property, Faye deeded the property to herself and defendant with mutual rights of survivorship. Although the deed was executed in 1988, it was not recorded at that time. Defendant moved back into quarters at the motel in 1989. In 1990, Faye and defendant had a falling out, culminating in litigation between them concerning ownership of the motel. Defendant stopped paying Faye the share of monthly revenue she had previously received from the motel's operations. The lawsuit was settled in 1992 with defendant receiving title to the motel property. Although defendant assumed financial obligations to Faye in the settlement, he did not resume making monthly payments to her.

---

[1] Faye Thompson, who also appealed from the trial court judgment, died in October 1998 while the appeal was pending. No personal representative or successor in interest was substituted as a party defendant under ORAP 8.05 and ORCP 34 following her death. Therefore, when we refer to defendant, we refer only to Thomas Thompson, the sole remaining appellant.

Because Faye needed money for living expenses, home improvements and debts, including mortgage payments on the Heather Lane property, plaintiffs loaned money to Faye at various times during 1991 and 1992. In early 1992, Faye and Chloe jointly determined the total amount of money that plaintiffs had loaned to Faye, plus the outstanding mortgage loan balance and unpaid real estate taxes against the Heather Lane property. Plaintiffs then paid off the mortgage debt and property taxes in order to consolidate Faye's debts into a single loan.

In March 1992, Faye executed a promissory note in favor of plaintiffs, secured by a trust deed executed the same date against the Heather Lane property. The note was in the principal sum of $46,000, the amount of the consolidated loan. The note provided for nine percent interest and monthly payments, including interest, in the amount of $400.26. The note provided that it was secured by a trust deed against the Heather Lane property. However, the trust deed provided that it was given

"[to] secur[e payment] of * * * *$400.26* * * with interest thereon according to the terms of a promissory note of even date * * *, [with] the final payment of principal and interest * * * to be due and payable [no later than] June 1st, * * * 2014." (Emphasis added.)

The note and trust deed were prepared by Gus Fernandez, a realtor and family friend of Faye and Chloe. Fernandez obtained a preliminary title report for the Heather Lane property. The report showed that Faye was the sole owner of the property. Thereafter, the trust deed, with a copy of the note attached, was recorded in the official records of Jackson County in April 1992. Plaintiffs testified that they had no knowledge of defendant's interest in the property at the time the trust deed was recorded in April 1992.

From April 1992 until July 1994, Faye made regular monthly payments to plaintiffs on the note. She made no payments on the note thereafter. By mid-1994, Faye's health had deteriorated and she moved to California in order to live near plaintiffs. In the summer of 1994, Faye listed the Heather Lane property for sale. After learning that Faye planned to

sell the property, defendant recorded the survivorship deed in June 1994.

After discovering that defendant had recorded the deed, Faye filed a second lawsuit against defendant in which she sought to cancel the deed and remove its cloud on title based on fraud and duress. During the course of that litigation, Faye learned that the trust deed erroneously stated that the debt she owed plaintiffs was in the amount of $400.26 rather than the true amount, $46,000. Faye's attorney advised her that she could re-record the trust deed after correcting the amount recited for the indebtedness. Fernandez made the corrections on Faye's behalf and witnessed and notarized her execution of the corrected trust deed. Fernandez testified that Faye was lucid and wanted to make the correction when he presented the revised instrument to her. The corrected trust deed was then sent to Faye's attorney, who had it recorded in the Jackson County official records in July 1995.

In August 1995, Faye was too ill to attend the trial in her lawsuit against defendant to cancel the survivorship deed. The case nevertheless proceeded to trial and the court determined that the survivorship deed was valid. Faye later signed a statement to the effect that her transactions with plaintiffs were bona fide and that she was worried that defendant would attempt to invalidate the trust deed. In 1996, Faye returned to Oregon and resumed living in the Heather Lane residence.

In November 1996, plaintiffs filed this action on the promissory note and to foreclose the corrected trust deed. Plaintiffs alleged that the promissory note was in default by reason of nonpayment since 1994. Plaintiffs also alleged that the corrected trust deed was entitled to priority over defendant's survivorship deed because the survivorship deed was recorded after the trust deed was originally recorded in 1992. Defendant's answer alleged that plaintiffs' advances were actually gifts to Faye, that plaintiffs had notice of defendant's interest in the property when their trust deed was recorded, and that the trust deed was the result of coercion, undue influence, and misrepresentation on the part of plaintiffs.

Faye's sole testimony in this proceeding was given in a deposition. She was elderly and unable to remember many of the details of the various transactions with her children.

The case was tried to the court without a jury. The trial court made written findings of fact. The court found that the advances made to Faye by plaintiffs were loans and not gifts. The court also found that Faye had insisted that her obligation to plaintiffs be secured by a trust deed. The court further found that plaintiffs had no knowledge of the existence of the unrecorded deed creating defendant's interest in the property at the time the trust deed was recorded in 1992. Because defendant and Faye lived together and defendant provided care for Faye between 1992 and 1994, the court found it reasonable to expect that defendant knew that Faye was making monthly payments on the loan from plaintiffs. As a consequence, the court found that defendant knew or should have known of the existence of an encumbrance on the Heather Lane property that required monthly payments of $400.26. The court found that, because plaintiffs' trust deed was previously recorded, defendant was on notice of its existence before he recorded the survivorship deed in 1994.

The court also found that there was no evidence that the trust deed was re-recorded in 1995 to defeat defendant's claim that the survivorship deed was a valid conveyance. The court further found that there was no evidence that Faye had executed the original note and trust deed in 1992 or the corrected trust deed in 1995 as a result of coercion, undue influence, or misrepresentation. The court determined that there was "insufficient evidence to establish that Faye Thompson was not competent to sign the original trust deed and note in 1992 or to reform that trust deed and note in 1995." Finally, the trial court made the following finding of fact:

> "I further find that [defendant] could have discovered the trust deed at the time he recorded his deed by having a title search performed. By inquiring further at the time he recorded the 1988 deed, or at an earlier time, [defendant] would have discovered the note and trust deed and learned from a review of said note and trust deed that the original encumbrance was, in fact, $46,000 requiring a monthly payment of $400.26."

Based on the foregoing findings, the trial court concluded that plaintiffs' corrected trust deed was entitled to priority over defendant's deed. The court entered judgment in favor of plaintiffs against Faye on the promissory note in the amount of $47,681.75, plus interest, costs, and attorney fees. The judgment foreclosed the corrected trust deed and declared defendant's interest in the property to be subordinate to the full amount of the corrected lien. This appeal followed.

■ Defendant challenges several of the trial court's findings of fact. Those challenges fall into two categories: (1) defenses to the validity of the promissory note and trust deeds; and (2) attacks on the court's findings relating to the priority of the parties' interests in the Heather Lane property. Although we review actions in equity *de novo*, we give substantial weight to the trial court's findings where, as in this case, those findings depend on the resolution of conflicting testimony and the credibility of the witnesses. *Krueger v. Ropp*, 282 Or 473, 478-79, 579 P2d 847 (1978).

With respect to the first category of facts, we agree with the trial court's findings that the transactions between plaintiffs and Faye were loans and that the transactions were not tainted by lack of competence, coercion, undue influence, or misrepresentation. The court saw and heard testimony from a number of witnesses, including Fernandez and Faye's former attorney. Because the trial court's findings on those issues each included implicit credibility assessments based on disputed versions of the facts, we are especially reluctant to disturb them. *Id.* Defendant's affirmative defenses attacking the nature and validity of the underlying transactions between plaintiffs and Faye were not proven and merit no further discussion.

■ As to the second category, defendant first argues that plaintiffs had notice of his interest in the property because of the fact that he lived in the residence with Faye from time to time over a period of several years and had owned other property jointly with her. However, the trial court expressly found that plaintiffs had no knowledge of the existence of defendant's interest in the property before the trust deed was recorded in 1992. Moreover, defendant's mere residence in

his mother's home and the fact that they had owned the motel jointly afforded no constructive notice that he had an unrecorded ownership interest in the Heather Lane property.

Next, defendant disputes the trial court's findings that defendant took care of Faye's financial affairs between 1992 and 1994 and, therefore, had actual or constructive knowledge of the existence of the trust deed based on the payments Faye made to plaintiffs each month. We agree with defendant that those findings are not as firmly grounded in the record as those previously discussed. However, whether or not those findings were correct, they were not essential to the court's determination that defendant had constructive notice of the existence and extent of plaintiffs' interest in the property when he finally recorded the survivorship deed in 1994.

■ ■ Defendant's remaining challenges go to the trial court's legal conclusions. Defendant first argues that the corrected trust deed could not be foreclosed without reformation. More specifically, defendant asserts that plaintiffs were required to plead and prove an equitable basis for correcting the amount of debt facially secured by the original trust deed. We disagree. In this case, there was no need to reform the trust deed, because Faye corrected the mistake herself by executing the revised trust deed in 1995. The court may not reform an instrument unless the plaintiff alleges and proves that the writing on which the claim is based does not express the real agreement of the parties. *Ono v. Coos County*, 113 Or App 53, 55, 831 P2d 66 (1992). In this case, plaintiffs contend that the corrected trust deed *accurately* reflected the parties' agreement. Reformation is not required to validate corrections that the parties have already voluntarily made without resorting to litigation.

■ Defendant next contends that the trial court erred in concluding that plaintiffs' trust deed was entitled to priority over his own interest in the property. The parties agree that the analysis of that issue begins with ORS 93.640(1), which provides, in part:

> "Every conveyance, deed, land sale contract, assignment of all or any portion of a seller's or purchaser's interest

in a land sale contract or other agreement or memorandum thereof affecting the title of real property within this state which is not recorded as provided by law is void as against any subsequent purchaser in good faith and for a valuable consideration of the same real property, or any portion thereof, whose conveyance, deed, land sale contract, assignment of all or any portion of a seller's or purchaser's interest in a land sale contract or other agreement or memorandum thereof is first filed for record, and as against the heirs and assigns of such subsequent purchaser. As used in this section, 'every conveyance, deed, land sale contract, assignment of all or any portion of a seller's or purchaser's interest in a land sale contract or other agreement or memorandum thereof affecting the title of real property' includes mortgages, trust deeds, and assignments for security purposes * * *."

Under that statute, an unrecorded conveyance such as defendant's deed is valid as between grantor and grantee. The priority contest is determined by three factors: (1) the good faith of the subsequent purchaser; (2) whether the subsequent purchaser paid a valuable consideration; and (3) whether the subsequent purchaser's conveyance is filed first for record. *Nelson v. Hughes*, 46 Or App 353, 611 P2d 688 (1980), *aff'd* 290 Or 653 (1981). In this case, plaintiffs have the burden of proving their status as bona fide purchasers. *Id.* at 665-66; *see also Akins v. Vermast*, 150 Or App 236, 241, 945 P2d 640 (1997) (the holder of a trust deed is treated as a purchaser for purposes of the statutory priority determination).

■　　Defendant makes several arguments in support of his claim to statutory priority. He first contends that plaintiffs were not bona fide purchasers for value without notice of the existence of his unrecorded deed when the original trust deed was recorded in 1992. As we have already stated, the evidence established and the trial court found that plaintiffs acquired their interest in the property in good faith and for value. Because their interest was recorded first, plaintiffs have satisfied each of the requirements under the statute. Therefore, the trust deed, as first recorded in 1992, is entitled to priority over defendant's deed. Defendant nevertheless contends that the trust deed is entitled to record priority only

to the extent of $400.26, the face amount shown in the originally recorded instrument. He reasons that, because the survivorship deed was recorded before the trust deed was corrected and re-recorded in 1995, the trust deed is not entitled to priority for the much larger full amount owed on the promissory note. Again, we disagree.

The notice that will deprive the grantee under a subsequently recorded deed of priority can be either actual or constructive. *High v. Davis*, 283 Or 315, 333, 584 P2d 725 (1978). Constructive notice encompasses both notice chargeable under the recording statute, ORS 93.710, and inquiry notice. *Id*. A properly recorded trust deed constitutes record notice to third persons of the rights of the parties under the instrument. ORS 93.710.[2] Inquiry notice, on the other hand, arises when the existence of a claimed interest in real property may be determined through investigation based on facts available to the claimant that would cause a reasonable person to make such inquiry. *Id*. at 333-34; *Vandehey Development Co. v. Suarez*, 108 Or App 154, 157, 814 P2d 1094, *rev den* 312 Or 235 (1991). Recorded instruments may themselves provide inquiry notice. *See Lewis v. Investors Leased Group II*, 118 Or App 361, 366, 848 P2d 113 (1993).

Plaintiffs argue that the trust deed as originally recorded furnished constructive notice of the correct amount of the debt secured through both record and inquiry notice. Defendant contends that the trust deed did not provide record notice of the correct amount of the secured debt because the amount shown on the first page of the trust deed was far smaller. We need not decide whether record notice alone was sufficient because, for the following reasons, we conclude that

---

[2] ORS 93.710 provides, in part:

"(1) * * * Any instrument creating a * * * trust deed * * * which is executed by the person from whom the * * * trust deed * * * is intended to be given, and acknowledged or proved in the manner provided for the acknowledgment or proof of other conveyances, may be indexed and recorded in the records of mortgages of real property in the county where such real property is located. Such recordation * * * constitutes notice to third persons of the rights of the parties under the instrument irrespective of whether the party granted such interest or estate is in possession of the real property."

the trust deed did provide inquiry notice of the correct amount of the debt.

In this case, a reasonable person examining the record title to the property at the time defendant's deed was recorded would have questioned the accuracy of the minimal obligation shown on the first page of the trust deed for several reasons. First, the trust deed recited that the obligation was payable in monthly installments with the final payment not falling due until June 1, 2014, or 22 years after the date of the instrument. It is implausible that such a lengthy amortization period would apply to a secured debt in the amount of $400.26. More importantly, a copy of the promissory note was recorded with the trust deed. An obligation and the instrument securing it must be construed together. *State ex rel Driscoll v. Inter-West Insurance Co.*, 92 Or App 88, 91, 756 P2d 1283 (1988). The note correctly stated that the principal indebtedness was $46,000 and that monthly payments were payable in the amount of $400.26, the amount mistakenly shown as the principal balance on the first page of the trust deed. Moreover, the note recited a 22-year amortization schedule, coinciding with the schedule stated in the trust deed. The note also provided that it was "secured by property located at: 110 Heather Lane, Shady Cove, Oregon." Finally, the trust deed recited the identical street address for the property it encumbered.

In *High*, a mortgagee's interest in ranch property was held subordinate to the recreational rights of members of a hunting and fishing club. Although the recreational interests were recorded before the mortgage was recorded, they were not properly acknowledged and did not clearly describe the encumbered property. Therefore, the recorded documents did not provide adequate record notice of the interests. However, the recreational interests were shown as exceptions on the title report the mortgagee received before advancing loan funds. The Oregon Supreme Court held that the lender had a duty to inquire of the interest holders in order to determine the extent of the interest claimed. Because the lender failed to inquire, it was charged with notice of the facts that would have been discovered by such an inquiry, and the recreational interests were accorded priority over the mortgage lien. *Id.* at 332-34.

If anything, defendant's claim to priority in this case is weaker than the mortgagee's position in High. In that case, the lender changed its position by loaning funds to the owner when it recorded its interest in the property. In this case, defendant did not change his position in reliance on the typographical error in the originally recorded trust deed. He simply recorded his deed six years after the date of the conveyance without investigating the title to the property for intervening interests. We hold that, under these circumstances, a reasonable person in defendant's position recording an interest in the property would have discovered the recorded trust deed and would have inquired further in order to verify the correct amount of the debt secured by the trust deed. Such an inquiry would have disclosed the true amount of the obligation. Therefore, the originally recorded note and trust deed furnished constructive notice of the amount of the debt secured so as to achieve priority to the full extent of that debt over defendant's subsequently recorded deed.

Because of our disposition of this case, we do not address defendant's challenge to the trial court's finding that he had constructive notice of Faye's obligation to plaintiffs based on knowledge of her financial circumstances. Defendant's remaining arguments do not merit discussion.

Affirmed.