William J. McGINNIS, Appellant
(Defendant below),

and

First National Bank of Kemmerer, Wyoming,
a national banking corporation
(Defendant below),

v.

Delia F. McGINNIS, Executrix of the Estate
of Anderson L. McGinnis, Deceased, Walter
C. Yose, Miranda Yose, Viola McGinnis,
Lulu Budd, Olive Irwin, and Carrie Warn-
er, Appellees (Plaintiffs below).

No. 3195.

Supreme Court of Wyoming.

May 6, 1964.

Galicich & Hamm, Kenneth G. Hamm,
Rock Springs, for appellant.

C. M. Crowell, Casper, for appellees.

Before PARKER, C. J., and HARNS-
BERGER, GRAY, and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

Plaintiffs filed a complaint against William J. McGinnis and the First National Bank of Kemmerer, alleging in substance that members of the McGinnis family owning lands in Lincoln and Sublette counties had in 1941 executed an Assignment in Trust to the bank of all gas and oil royalties resulting from development operations on the lands they then owned, moneys from the proceeds thereof to be distributed by the bank to all the members of the McGinnis family in proportion to the ownership of shares of capital stock in the late McGinnis Land and Cattle Company; that there was no production on the lands until 1956 when William J. McGinnis received royalties from his lands but refused to deliver them to the bank although Anderson L. McGinnis, one of the plaintiffs, had received payments for royalties which he was willing to deliver to the bank and willing to authorize all future payments on account of royalties to be made to the bank; and praying that William J. McGinnis be required to account for and pay the bank in trust all the sums received by him from royalties and that all the parties be required to authorize payment of future royalties in the same manner. The answer admitted the execution of an instrument purporting to be an assignment in trust and alleged that the complaint failed to state a claim and that the purported assignment was illegal, void, and contrary to law, public policy, and Wyoming's constitution and statutes, and prayed judgment. The case was tried to the court without a jury on an agreed statement of facts, which may be summarized as saying:

The McGinnis Land and Cattle Company was a family corporation, owning lands in Lincoln and Sublette counties, and all eight beneficiaries of the mentioned assignment in trust were members of the family and stockholders in the corporation. Prior to its dissolution in 1922, the corporation had conveyed its lands without mineral reservation to five of the eight members of the family. In 1941 those members owning the lands executed a purported assignment in trust to the bank, providing for distribution by the trustee of all royalties from the lands to the eight members of the family in proportion to the stock each had held in the family corporation. The executed original of the purported assignment was delivered to defendant William J. McGinnis, who in 1954 recorded it in Lincoln County and in 1960 in Sublette County, where production of oil and gas was had on his land in 1957. He refused to pay or authorize to be paid such royalties to the trustee. Production was had on the lands of Anderson L. McGinnis and the Yoses in 1959 and 1962 respectively.

The district court ordered that all amounts which had been received by any of the parties on account of the royalties be paid to the bank as trustee and that the recipients execute proper instruments to effectuate payment due or to become due. From the judgment defendant William J. McGinnis has appealed, arguing that for various reasons the assignment is invalid and contrary to the Wyoming constitution and statutes, principally because it violates the rule against perpetuities, constitutes a prohibited restraint on the power to alienate property, provides no time of performance, was executed without consideration or mutual obligation, and is judicially unenforceable.

The significant portions of the Assignment in Trust, the legality of which is here in issue are:

"WHEREAS, it is the desire of the parties named herein that each shall share in any and all royalties derived or produced from said hereinafter described lands, regardless of the ownership thereof from which such royalties are produced, in the proportion based upon the ownership of each of the capital stock of the McGINNIS LAND AND CATTLE COMPANY,

now dissolved hereinafter particularly set forth;

"NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS, that in consideration of the mutual promises and agreements of said parties and of the sum of ONE DOLLAR each to the other in hand paid, and of the fees and commissions to be paid to the trustee hereinafter named, the parties to this agreement hereby assign, transfer and set over unto the FIRST NATIONAL BANK OF KEMMERER, WYOMING, any and all oil and gas royalties due or to become due us, or either of us, under and by virtue of any and all oil and gas leases heretofore executed by the parties hereto, whether jointly or individually, and any and all oil and gas royalties that may hereafter become due and payable to the parties hereto, or any of them, from and by virtue of any oil and gas leases that may hereafter, or at any time executed by us, whether jointly or severally, pertaining to the lands hereinafter mentioned, to any person, firm or corporation to whom we, or any of us shall or may convey by lease or otherwise for the purpose of prospecting for oil and/or gas, together with any and all the oil and gas royalties that may be produced from said lands or any part thereof through the production of oil and/or gas in any other way or manner whatsoever."

As a prelude to analysis of the case, the concession of defendant should be observed that a nonparticipating royalty interest may be assigned and his failure to challenge the legality of such practice in Wyoming. This concession is in accordance with accepted authority. Annotation, 46 A.L.R. 2d 1268. He, nevertheless, distinguishes the present situation from other assignments of nonparticipating oil and gas royalties and points out that ordinarily both legal and equitable title vest immediately in the assignee whereas in the matter before us legal title of the royalties vests in the trustee but the extent of the equitable title in the beneficiaries is dependent upon "indeterminate contingent factors." He argues additionally that since the instrument provides for no termination, gives no power to sell or convey, and there is no right of the beneficiaries to have the trust terminated, there is created an indissolvable trust to continue forever for the purpose of collecting and paying over the royalty proceeds, and thus there is a violation of the rule against restraint on alienation.

■ A portion of defendant's brief and argument deals with the possibility that under Wyoming law oil and gas royalties are personal property and must be so considered in the determination of any questions here presented. It is unnecessary to review the cases to which he refers since royalties as those here in issue have been found in this jurisdiction to be realty. The reasons for this rule were analyzed by Judge Blume in State ex. rel. School Dist. No. 1 in Weston County v. Snyder, 29 Wyo. 163, 212 P. 758, and summarized by him in Denver Joint Stock Land Bank of Denver v. Dixon, 57 Wyo. 523, 122 P.2d 842, 849, 140 A.L.R. 1270:

> "* * * The right to a royalty interest in oil does not merely attach after the oil has been severed from the ground and has become personal property. It is not merely rent issuing out of the annual produce of the land. It goes further than that. The right, extending as it does to oil which is to come from particular land, extends to and is necessarily connected with the corpus of the land, and is, accordingly, a right which exists in the oil which still is in place, inchoate though it may be, follows it as it comes from the ground and still is attached after it has become personal property. To call it personal property is but emphasizing a particular stage of the right on its way to fulfillment. It ignores that it is a right which necessarily extends to part of the corpus of the land. * * *" See

Dame v. Mileski, 80 Wyo. 156, 340 P.2d 205.

Two questions of importance are presented by this appeal:

(1) Was the Assignment in Trust invalid because of remoteness of vesting of title in the beneficiaries; and

(2) Was the said assignment void because it constituted an unreasonable restraint on the power of alienation?

■ The rules that interest must vest within a certain time and that after it has vested it must be alienable have the same fundamental purpose, that is, keeping property alienable, but the objectives are accomplished by different methods. 6 American Law of Property §§ 24.6 and 26.66 (Casner ed. 1952); Gray, The Rule Against Perpetuities §§ 2.1, 119, and 437.1 (4 ed.); and see 44 Ill.L.Rev. 467; 51 Harv. L.Rev. 638.

### Rule Against Perpetuities

. We consider then defendant's argument that the Assignment in Trust was invalid as a violation of the rule against remoteness of vesting. Some time is devoted by counsel to a discussion of the basis for the existence of the rule against perpetuities in this jurisdiction; however, its applicability is undisputed and its source is not here pivotal. Aside from the effect in this jurisdiction of the rule's existence at common law, Art. 1, § 30, Wyo.Const., provides that perpetuities are contrary to the genius of a free state and shall not be allowed. C. 92, S.L. of Wyoming, 1939, is discussed by counsel for both parties, each presenting his view on its bearing upon the present situation but both agreeing that it was effective at the time the Assignment in Trust was executed. Defendant argues that the statute must be interpreted in the light of the rule against perpetuities and that accordingly the assignment must fail, while plaintiffs contend that the statute makes sense only as a prohibition against restraint on alienation and that as

such it supplants any common law rule on the subject. On the assumption that the royalty interest is realty, defendant asserts that although the legal title to the royalty may have vested in the trustee at the time of the execution of the agreement the beneficiaries acquired if anything only an equitable interest in a mere contingency since any of their rights were dependent upon the execution of a lease, the production under the lease, the payment to the trustee, and the extent of the trustee's expenses of administration. He cites neither authority which addresses itself to royalty interest nor cases dealing with oil and gas matters as a basis for his contention but instead presents excerpts from Gray, The Rule Against Perpetuities (4 ed.). He quotes § 246, which states that if the amount of an interest is indeterminate and remains dependent upon future events the interest is not vested for the purposes of the rule, and § 325, dealing with the fact that a limitation may be too remote in equity which would be good at law. A careful study of these quoted sections fails to disclose that the author had in mind any circumstances similar to those before us, and no apt analogy has been shown which would render them controlling in the present litigation.

■ As we view the matter before us each of the beneficiaries acquired by the Assignment in Trust not a contingency but the beneficial interest in the landowners' oil and gas royalties in the described lands which bore the same relationship to the entire landowner-royalty interests that beneficiaries' stock ownership in the Mc-Ginnis Land and Cattle Company bore to all of the outstanding stock of the corporation. Under a reasonable interpretation of the Assignment in Trust, each beneficiary was to share in the landowner-royalty interests [1] regardless of the ownership of the land or mineral interests, and the beneficial interests transferred were not indeterminate or dependent upon future events.

1. Subject to the usual limitations upon nonparticipating royalty interests as explained in Picard v. Richards, Wyo., 366 P.2d 119.

No intent to pass a less estate expressly appeared in the instrument or could necessarily be implied in its terms and thus under the provisions of § 34–41, W.S.1957, there was a conveyance of a fee simple interest in the landowner-royalty to the trustee with the equitable interest vesting immediately in the beneficiaries. The rule against perpetuities was therefore not violated.

### Rule Against Restraints on Alienation

On the question of violation of the rule against restraints on alienation, defendant is at some pains to give reasons why the assignment was perpetual and cites § 34–41 concerning the passing of all of the estate of a grantor, and § 97–107, W.R.S.1931,[2] providing that there are no covenants by implication. From a consideration of these he concludes that the trust is to continue indefinitely with no right of the trustee to alienate the corpus, and we will assume that his deduction is correct since plaintiffs advance no cogent argument to the contrary.

■ We first direct our attention to the question of whether or not the rule exists in this State. The district court said in the judgment that there was no statute on the subject, and the defendant does not directly contend that there is, but urges that such a rule existed at common law. As authority therefor he cites 41 Am.Jur. Perpetuities and Restraints on Alienation § 82, and Bogert, Trusts, § 74 (Hornbook Series, 2 ed.). Plaintiffs insist that there is no common law rule against restraints on alienation in Wyoming and that such a rule in this jurisdiction is solely statutory or otherwise nonexistent. In developing this thesis plaintiffs argue that c. 92, S.L. of

Wyoming, 1939,[3] now repealed but effective at the time the Assignment in Trust was executed, is logical only as a prohibition against restraints on alienation. They contend also that Art. 1, § 30, Wyo.Const., stating that perpetuities shall not be allowed, does not refer to restraints on alienation, despite the confusion of the two terms by some authorities. They conclude that the mentioned provisions exhaust the constitutional and statutory possibilities of restraints on alienation. Since it is generally conceded by all of the eminent authors that the subject of restraints on alienation is separate and distinct from the rule against perpetuities, the constitutional provision is without force in this field. We find nothing in c. 92, S.L. of Wyoming, 1939, which clearly indicates that the common law is inapplicable to matters relating to restraints upon alienation. See Simes, Cases on Future Interests, p. 669 (2 ed.) and Simes and Smith, Law of Future Interests, § 1438 (2 ed.). It is our view that there is no effective rule in Wyoming on restraints against alienation unless it be that which was derived from the common law.

■ We turn then to analyses which have been made concerning such a common law rule. Gray, The Rule Against Perpetuities, § 119.1 (4 ed.) assumes it to be axiomatic that no restraints on alienation of property are allowed by the common law. The matter is well summarized in 16 Vand.L.Rev. 57, 74:[4]

"Apart from the rule against perpetuities and the statutory suspension rule, any restriction on the permissible duration of indestructible trusts must come from the common law policy against

---

2. Now changed by amendment and appearing as § 34–36, W.S.1957.

3. "No estate in fee simple, fee tail, or any lesser estate, in lands or tenements, lying within this state, shall be given or granted, by deed or will, to any person or persons but such as are in being, or to the immediate issue or descendants of such as are in being at the effective time of such deed or will; and all estates giv-

en in tail shall be and remain absolute estates in fee simple to the issue of the first donee in tail. The law relating to estates in tail in real property shall apply to entailed estates in personal property."

4. "Perpetuities, Restraints on Alienability, and the Duration of Trusts," by the author of Newman, Trusts (2 ed.).

unduly protracted suspension of the power of alienation. Clearly such a policy existed since very ancient times in English law. Both the rule against perpetuities and the statutory suspension rule are devices to reduce to more or less specific formulation this common law policy of encouraging alienability of property, which dates back to near the end of the first century after the Norman Conquest. Early manifestations of the policy were the enlargement of life estates held under tenants in capite into estates of inheritance by the introduction of the conditional fee in the time of Henry II; the mortmain provisions of Magna Charta and the Statute of Mortmain of 1279; D'Arundel's Case, decided in 1225, establishing the right of an owner in fee simple to alienate his property without the consent of his expectant heirs; chapter 1 of Quia Emptores, 1290, which forbade the owner of a fee simple, in alienating his property, to impose new obligations of feudal tenure in his own favor; and the methods devised in the late middle ages for escape from the effect of De Donis in validating estates tail, culminating in Taltarum's Case and perpetuated in modern statutes, in both England and in all of the states of the United States, eliminating the fee tail. The policy still exists with even more imperative need than in ancient times. Whether the policy is reduced to specific formulation by rule or by statute is not especially important."

As a basis for his position that there is no common law rule regarding restraints on alienation, counsel for plaintiffs cites In re McCray's Estate, 204 Cal. 399, 268 P. 647, 650 (1928), for the statement that "The rule relating to restraints on alienation * * * is statutory in origin * * *." Since that court was discussing a California statute the opinion is not authority against the existence of the rule at common law. The only other authorities cited by counsel

on this point are 1 A.L.I. Restatement, Second, Trusts, § 62(1) (1959), noting that in some states where there are statutes the common law rule against perpetuities is not applicable; Bogert, Trusts, § 74 (Hornbook Series, 2 ed.), stating that "Although the matter is not entirely free from doubt, the American courts have apparently laid down a common law rule that private, indestructible trusts must be limited in duration"; and 19 Harv.L.Rev. 598, 603:

> "* * * the suggestion of the courts of Massachusetts, Illinois, and Pennsylvania all indicate that the rule will probably be well settled here that language which, if carried out as expressed, may possibly cause the trust of an absolute indefeasible equitable interest to be or remain indestructible at a time beyond the period of a life or lives in being and twenty-one years, will be unenforceable. It cannot of course be too emphatically stated that this is not the Rule against Perpetuities, but a new rule limiting the time that the trust of an absolute indefeasible equitable interest may be made indestructible. * * *"

Counsel, with regard to the last authority, asks, "Are we in Wyoming because of our adoption of the common law of England (Sec. 8–17, Wyoming Statutes, 1957), to engraft upon our law a 'new rule' suggested by the courts of Massachusetts, Illinois and Pennsylvania?" In our view, counsel's questioning the applicability here of a rule in some jurisdictions that an absolute indefeasible interest indestructible at a time beyond the period of a life or lives in being and twenty-one years is unenforceable has no bearing on the fact that at common law there is a rule or policy against unduly protracted suspension of the power of alienation. Incidentally, with relation to the subject of trusts and the common law rule, it is interesting to note the statement in 16 Vand.L.Rev. 57, 69, that "In England perhaps it is because trusts are not ordinarily indestructible that their existence is not considered to suspend the power of

alienation, and thus they are not considered to violate the common law policy against unduly prolonged suspension."

In essence, the philosophy which has prompted the courts in this country to invoke the mentioned rule is the inherent dangers which come from the clogging of alienability. In the case before us, it is conceded and in fact is one of the principal contentions of defendant that the trustee in this case has only the ministerial duties of collecting the proceeds of the royalties and distributing them. The trustee has bare legal title only. It is clear beyond question that the equitable title to the beneficiaries is alienable. It is stated in 2 Scott, Trusts, pp. 983, 984 (2 ed.):

> "Both in England and in the United States today it is clear that the beneficiary of a trust, if he is not under a legal incapacity, can transfer his interest under the trust, unless his interest is made inalienable by the terms of the trust or by statute, or unless his interest is of such a character that it cannot be transferred, as, for example, where the trust is for his personal support, or is a discretionary trust. * * * [Quoting from a cited case:] 'Trust estates are subject to the same incidents, properties and consequences as, under like circumstances, belong to similar estates at law. They are alienable, devisable, and descendable in the same manner.' "

This view is recognized and approved in 1 A.L.I. Restatement, Second, Trusts, § 132 (1959). For all the defendant has shown here, the fact of the legal title to the royalties remaining in the bank in no way conflicts with the public policy which has been responsible for the rule against restraints on alienation. While it was undoubtedly ill advised that the Assignment in Trust was drawn without provision for termination, there is no valid reason why the lack thereof should vitiate the arrangement. Whether or not the trust could be terminated in accordance with the provisions of 2 A.L.I. Restatement, Second, Trusts § 337 (1959),

as plaintiffs contend, need not here be decided.

Defendant argues that the Assignment in Trust was not performed within a reasonable time and hence was unenforceable, that it was not supported by adequate consideration, there being no mutuality of obligation and no consideration, and that specific performance was not available as a remedy. Each such defense is one against the enforcement of a contract, and all of the authorities here presented relate to that subject. It is clear that the assignment was not a contract, but was an executed transaction to which none of such defenses apply.

We find no error in the judgment of the trial court.

Affirmed.