2009 WY 143

**HORSE CREEK CONSERVATION DISTRICT, a Wyoming Irrigation District; and Phase 23, LLC, a Wyoming Limited Liability Company, Appellants (Defendants),**

v.

**STATE of Wyoming, ex rel., the WYOMING ATTORNEY GENERAL, Appellee (Plaintiff).**

No. S–08–0200.

Supreme Court of Wyoming.

Nov. 23, 2009.

Representing Appellants: Curtis B. Buchhammer, Buchhammer & Kehl, PC, Cheyenne, Wyoming.

Representing Appellee: Bruce A. Salzburg, Attorney General; Michael L. Hubbard, Deputy Attorney General; Ryan T. Schelhaas, Senior Assistant Attorney General; Brandi Lee Monger, Assistant Attorney General. Argument by Mr. Schelhaas.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] The district court granted summary judgment in favor of the State of Wyoming ruling that, pursuant to an agreement between Horse Creek Conservation District (HCCD) and the State, the public has a perpetual right of recreational use access to HCCD property adjacent to the Hawk Springs Reservoir. On appeal, appellants claim that the district court committed a host of legal errors in arriving at its decision. We will affirm the district court's decision, though on a slightly different basis. We conclude that Wyoming statutes expressly required HCCD to grant public access to its property adjacent to the reservoir as part of the legislation appropriating funds for rehabilitation of the dam and water conveyance systems. When the project agreement is interpreted in accordance with the statutes, it provides for public access to HCCD property. Nevertheless, we remand for reformation of the agreement so that it will conform fully to the statutory language.

## ISSUES

[¶ 2] HCCD and Phase 23 present a multi-faceted issue challenging the district court's summary judgment ruling:

I. In granting summary judgment to appellee, did the trial court err by:

A. Incorrectly interpreting and construing the project agreements entered into by the parties as creating a "perpetual, public recreational use access" to the Hawk Springs Reservoir and adjacent lands?

B. Incorrectly interpreting and construing W.S. §§ 41-2-216 through 41-2-218 as memorializing or creating a "perpetual, public recreational use access" to the Hawk Springs Reservoir and adjacent lands?

C. Incorrectly determining that Phase 23, LLC, was not a bona fide purchaser?

D. Incorrectly determining that petitions filed with the Eighth Judicial District Court requesting approval of the project agreements acknowledged a grant of public access and contained sufficient legal descriptions of the property subject to public access?

E. Incorrectly determining that Horse Creek Conservation District is barred by contract law, laches, estoppel and applicable statutes of limitations from challenging appellee's prior improvements at the Hawk Springs Recreation Area?

F. Failing to find that the statutory provisions of W.S. § 41-2-218(b)(ii)(G) purportedly creating a perpetual right of public access over Horse Creek Conservation District property are in violation of the Rule Against Perpetuities?

The State phrases the issues differently:

1. Did Horse Creek Conservation District, in exchange for more than $8,500,000 of taxpayers' money, grant perpetual public access to Hawk Springs Reservoir and all adjacent lands owned by it or the State of Wyoming for the purposes of hunting, fishing and general recreation?

2. Does the right of perpetual public access run with HCCD's land adjacent to the Hawk Springs Reservoir?

## FACTS

[¶ 3] Hawk Springs Reservoir was originally constructed in the early 1900's and is located on Sections 9, 10, 15, 16, 21, and 22 of Township 20 North, Range 61 West, 6th P.M. in Goshen County, Wyoming. HCCD is an irrigation district organized under Wyoming law and owns much of the land covered by and surrounding the reservoir. In 1911, the State Board of School Land Commissioners granted an easement to HCCD's predecessor to allow the reservoir to inundate part of Section 16.[1] Later, HCCD received an additional grant from the State increasing the reservoir easement to encumber the entire east half of Section 16.

[¶ 4] In the late 1970s or early 1980s, Hawk Springs Reservoir was determined to be hydrologically inadequate.[2] In 1983, the Wyoming Legislature passed legislation to provide funding to rehabilitate the dam and water conveyance systems. Wyo. Stat. Ann. §§ 41–2–216 through 41–2–218 (LexisNexis 2007).[3] Because the language of this act is critical to our decision, we will restate most of it verbatim in the discussion below. For now, we note the statute's requirement that, before funds could be released to HCCD for the reservoir construction project, a project agreement had to be made with the Department of Economic Planning and Development (DEPAD), with a provision guaranteeing perpetual public access to the reservoir and adjacent lands.

[¶ 5] The parties executed the first project agreement on November 7, 1983. The agreement recitals referred to the enabling legislation and indicated that State funding was provided to accomplish a number of goals, including repairing the dam and water delivery systems and constructing "facilities for public benefit." The agreement iterated the legal description of the reservoir and recited the funding apparatus, which included grants and loans from the State to HCCD. The agreement also provided that HCCD could not deny the public access to the reservoir and "adjacent public lands designated for recreational use."

[¶ 6] An additional appropriation of funds was needed to complete the project. Consequently, the parties entered into a second project agreement on April 1, 1985. The second project agreement expressly superseded the first project agreement. Given that the relevant provisions of the project agreements are virtually identical, however, we will not distinguish between the two except where specificity is required.

[¶ 7] HCCD petitioned the district court for approval prior to entry into each project agreement. Pursuant to the petition process, the members of HCCD were given notice and the opportunity to object to the agreements. No HCCD member objected to the project agreements, and the district court entered orders approving them. HCCD and DEPAD also executed mortgages and promissory notes to secure the loans from the State.

[¶ 8] Using State funds totaling more than $8,500,000, HCCD made the repairs to the dam and water conveyance system. In addition, the State constructed various improvements next to the reservoir, including camping facilities, restrooms, and a boat ramp. Most of the improvements were located on HCCD lands in Section 9. The rest of the public facilities were located immediately to the south on State land in Section 16.

[¶ 9] On September 11, 2006, HCCD entered into a contract for deed to sell forty acres in Section 9 to Phase 23, LLC. The forty acres included many of the public im-

---

1. Upon admission to the United States, Sections 16 and 36 of each township were reserved to the State of Wyoming for the benefit of common schools. Wyo. Const. Organic Act, 15 Stat. 178, ch. 235, § 14 (1868); Wyo. Act of Admission, 26 Stat. 222, ch. 664, § 4 (1890).

2. Apparently, HCCD now questions the accuracy of the information that led to the determination that rehabilitation of the reservoir was necessary. Given that the rehabilitation took place, the validity of that initial determination is irrelevant to our analysis.

3. Effective July 1, 2009, these statutes were renumbered as Wyo. Stat. Ann. §§ 99–99–216 through 99–99–218. 2009 Wyo. Sess. Laws ch. 168, § 401.

provements constructed by the State. The only members of Phase 23 were Ronald and Dorothy Buchhammer. The Buchhammers were members of HCCD when the project agreements were submitted to the district court for approval, and they offered no objections to the agreements. In addition, at the time Phase 23 entered into the contract for deed, Mr. Buchhammer was employed by HCCD as its superintendent. After the contract for deed was executed and notice was given to the State that the property had been sold, Mr. Buchhammer put up a gate and no trespassing signs, thereby terminating public access to the recreation area.

[¶ 10] The State filed this action seeking a judgment declaring that the public had the right to perpetual access to HCCD lands adjacent to the reservoir. It also filed a motion for injunctive relief to require HCCD and Phase 23 to restore public access to the area. HCCD and Phase 23 responded and counterclaimed for declaratory relief and monetary damages for the State's use of HCCD property. The district court granted the State's motion for injunctive relief, and dismissed all of HCCD's claims except for the declaratory judgment claim, concluding that the dismissed claims were barred by the Wyoming Governmental Claims Act, Wyo. Stat. Ann. § 1–39–101 *et seq.* and Wyo. Const. art. 16, § 7.[4]

[¶ 11] The State then filed a motion for summary judgment. After considering the parties' voluminous filings, the district court granted summary judgment in favor of the State. It ruled that the project agreement granted the State perpetual public recreational use access to Hawk Springs Reservoir and HCCD's land adjacent to the reservoir. The district court stated that HCCD's attempts to challenge the State's improvements on HCCD lands were barred by contract law, laches, estoppel and the applicable statutes of limitations. The district court also ruled that Phase 23 was not a bona fide purchaser and could not, therefore, challenge the State's public access interest. HCCD and Phase 23 filed a timely notice of appeal.

## STANDARD OF REVIEW

[¶ 12] Our standard for reviewing summary judgment orders is well known:

> Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c); *Metz Beverage Co. v. Wyoming Beverages, Inc.,* 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo.2002). "A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted." *Id.* Because summary judgment involves a purely legal determination, we undertake *de novo* review of a trial court's summary judgment decision. *Glenn v. Union Pacific R.R. Co.,* 2008 WY 16, ¶ 6, 176 P.3d 640, 642 (Wyo.2008).

*Jacobs Ranch Coal Co. v. Thunder Basin Coal Co., LLC,* 2008 WY 101, ¶ 8, 191 P.3d 125, 128–29 (Wyo.2008). We view the facts from the vantage point most favorable to the party opposing the motion, and give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Brumbaugh v. Mikelson Land Co.,* 2008 WY 66, ¶ 11, 185 P.3d 695, 701 (Wyo.2008).

*Riverview Heights Homeowners' Association v. Rislov,* 2009 WY 55, ¶ 7, 205 P.3d 1035, 1038 (Wyo.2009). We are not bound by the district court's legal reasoning and "may affirm the summary judgment on any legal grounds appearing in the record." *Voss v. Goodman,* 2009 WY 40, ¶ 9, 203 P.3d 415, 419 (Wyo.2009), quoting *Wyoming Cmty. College Comm'n v. Casper Cmty. College Dist.,* 2001 WY 86, ¶ 11, 31 P.3d 1242, 1247 (Wyo.2001).

## DISCUSSION

### 1. Statutory Provisions Pertaining to Public Access

[¶ 13] Wyo. Stat. Ann. §§ 41–2–216 through –218 provided State funding for the reconstruction of Hawk Springs Reservoir. It included a provision expressly pertaining to public access to the reservoir and adjacent

4. The appellants do not contest the district court's dismissal order on appeal.

lands for recreational purposes. We must interpret the statute to determine whether public access to HCCD land adjacent to the reservoir is required.

[¶ 14] Our statutory interpretation rules are well-known. Statutory interpretation is a question of law. *Krenning v. Heart Mountain Irrigation Dist.*, 2009 WY 11, ¶ 9, 200 P.3d 774, 778 (Wyo.2009). Our paramount consideration is the legislature's intent as reflected in the plain and ordinary meaning of the words used in the statute. Initially, we determine whether the statute is clear or ambiguous.

A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. If we determine that a statute is clear and unambiguous, we give effect to the plain language of the statute.

*Id.*, quoting *RK v. State ex rel. Natrona County Child Support Enforcement Dep't*, 2008 WY 1, ¶ 10, 174 P.3d 166, 169 (Wyo. 2008). In interpreting a statute, we will not ignore other statutory provisions pertaining to the same subject but will, instead, consider all such provisions *in pari materia. Qwest Corp. v. Public Service Comm'n of Wyoming*, 2007 WY 97, ¶ 22, 161 P.3d 495, 501 (Wyo. 2007).

[¶ 15] The language and context of the relevant statutes are critical to our decision. Consequently, despite its length, we quote the majority of the act here. Section 41–2–216 stated:

(a) As used in this act:

(i) "Commission" means the Wyoming water development commission;

(ii) "Department" means the department of economic planning and development [economic development and stabilization board];

(iii) "District" means the Horse Creek conservation district;

(iv) "Project" means the Hawk Springs project under W.S. 41–2–217;

(v) "This act" means W.S. 41–2–216 through 41–2–218.

Section 41–2–217 stated:

(a) The Hawk Springs project consists of the following components:

(i) Necessary repairs to Dam No. 1 on Hawk Springs Reservoir, Goshen County;

(ii) Renovation of the existing delivery system of the district;

(iii) A public recreation area;

(iv) A geological and hydrological review of the project by the department;

(v) Replacement of the existing Horse Creek siphon;

(vi) Lining of the existing canal and, where economically feasible, replacing the canal with buried pipe;

(vii) Installation of necessary public facilities.

Section 41–2–218 stated:

(a) Subject to the conditions in subsection (b) of this section, the construction of the project shall be financed as follows:

(i) A grant to the district through the department not to exceed four million five hundred fifteen thousand dollars ($4,515,000.00), of which two million three hundred thirty thousand dollars ($2,330,000.00) shall be expended only for dam repair and outlet works and two million one hundred eighty-five thousand dollars ($2,185,000.00) for canal repairs. The department shall release grant funds as it deems necessary;

(ii) A loan to the district through the department as authorized in W.S. 9–2–206 [repealed] in an amount not to exceed one million nine hundred seventy-five thousand dollars ($1,975,000.00) to construct the project for a term of fifty (50) years to commence as provided in subparagraph (D) of this paragraph at an annual interest rate of four percent (4%)[.]

* * *

(iii) Authorization to the game and fish commission to expend not more than one hundred seventy thousand dollars ($170,000.00) for necessary public facilities for

the public recreation area in consultation with the department and the recreation commission [parks and cultural resources commission];

(iv) Authorization to the department to expend not more than sixty thousand dollars ($60,000.00) for a geological and hydrological review of the project under W.S. 41–2–217(a)(iv).

(b) The department shall not release any funds to the district authorized under paragraphs (a)(i) and (ii) of this section until:

(i) An independent geological and hydrological review under W.S. 41–2–217(a)(iv) has been completed;

(ii) The department and the district have entered into a project agreement providing the district shall undertake construction of all project components concurrently containing the following provisions and terms:

(A) The department shall review and approve all design and construction plans prior to construction;

(B) The district shall supervise design and construction and submit all requests for payment to the department;

(C) The department shall directly make necessary payments in response to requests for payment;

(D) The district shall provide security to the department as deemed sufficient by the attorney general to include a mortgage on the dam and canals and an assignment of water rights;

(E) The district shall grant to the department for the state, ownership of the storage in Hawk Springs Reservoir from elevation 4,446.9 feet to elevation 4,461.9 feet according to the 1982 United States soil conservation service survey, approximately one thousand seven hundred seventy-nine (1,779) acre-feet of water;

(F) The district shall operate the reservoir to provide a pool depth of twenty (20) feet by January 1 in those years when sufficient water is available;

(G) The district shall grant public access in perpetuity to the Hawk Springs Reservoir proper and to all adjacent lands owned by the district or the state for the purposes of hunting, fishing and general recreation including the construction of such facilities as deemed necessary by the game and fish commission to maximize the public enjoyment;

(H) The district shall pay all the costs including manpower for all operation, maintenance and repairs to the dam and water delivery system after the project is completed;

(J) The department shall determine an amount to be assessed annually by the district against district members and the district shall place the funds so collected into a separate account as a sinking fund adequate to meet future maintenance costs for the project;

(K) The department may contract with the district for maintenance of public facilities constructed under this project. (There is no subparagraph (b)(ii)(I) in this section as it appeared in the printed acts.)

[¶ 16] Section 41–2–218(b)(ii)(G) pertains to public access. HCCD and Phase 23 argue that the public access provision is ambiguous. They claim that, by describing the areas where HCCD was required to allow public access with the disjunctive "or" (i.e., public access to lands owned "by the district or the state") the legislature gave HCCD and DEPAD the power to negotiate perpetual public access to either district or State lands adjacent to the reservoir, but not necessarily to both. The appellants claim that, in making that election while drafting the project agreement, DEPAD and HCCD decided that the public would have access to the State land in Section 16 adjacent to the reservoir but not to HCCD's land adjacent to the reservoir.[5]

[¶ 17] On its face, the clear language of Wyo. Stat. Ann. § 41–2–218(b)(ii)(G) requires HCCD to grant public access to all adjacent lands, whether owned by the district or the State. The term "or" follows the phrase "all adjacent lands." Consequently, it seems that the "or" was used to distinguish between the

5. HCCD arguably needed to grant public access to State lands because it had a reservoir ease-ment on the east one-half of the State land located in Section 16.

two different types of lands the public would be entitled to access, not to give DEPAD and HCCD the authority to choose one or the other.

[¶ 18] The appellants correctly point out that this interpretation runs counter to one of the traditional statutory interpretation rules. That rule provides that the term "or" is typically used in the disjunctive sense and provides a choice between alternatives. *See, e.g., Olsten Staffing Services, Inc. v. D.A. Stinger Services, Inc.,* 921 P.2d 596, 600 (Wyo.1996). *See also Amoco Production Co. v. Board of Commissioners of Carbon County,* 876 P.2d 989, 993 (Wyo.1994) (interpreting "or" as disjunctive in the context of a statute requiring refund of "erroneous or illegal" tax payments). There is also authority, however, stating that "or" may be interpreted differently if necessary to harmonize the statutory provisions and give effect to the clear legislative intent.

[¶ 19] In *Beitel v. State ex rel. Wyoming Workers' Compensation Div.,* 991 P.2d 1242, 1245–46 (Wyo.1999), we interpreted a statute stating that an employee's late filing of an injury report in a worker's compensation case raised a presumption that his claim should be denied. The statute provided that the presumption could be rebutted "if the employee establishe[d] by clear and convincing evidence a lack of prejudice to the employer *or* division in investigating the accident and in monitoring medical treatment." *Id.* at 1245, quoting Wyo. Stat. Ann. § 27–14–502(c) (Michie 1991) (emphasis added). This Court held that when both the division and the employer objected to the employee's claim for benefits, the "or" must be interpreted as a conjunction, obligating the employee to prove that both the division and the employer were not prejudiced in order to overcome the presumption. That interpretation gave effect to the clear legislative intent that a worker should not receive benefits if his dilatory notice of injury prejudiced the ability of any eligible objector to investigate the accident or monitor medical treatment. *Id.* at 1247.

[¶ 20] *State Department of Family Services v. PAJ,* 934 P.2d 1257, 1262 (Wyo.1997) is another case interpreting the word "or" differently from its typical disjunctive meaning. The statute at issue in that case stated that "[t]he consent of the mother shall include an affidavit stating that she was not married at the time of conception *or* at the time of birth of the child." Wyo. Stat. Ann. § 14–2–102(c) (Cum.Supp.1996) (emphasis added). The State claimed that the mother's consent satisfied the statute if she averred to just one of the alternatives: she was unmarried at the time of conception, or she was unmarried at the time of birth. We ruled that, even though the term "or" was used in the statute, the legislature clearly intended a consent to be valid only if the mother could aver that she was not married at both the time of conception and the time of the child's birth. *PAJ,* 934 P.2d at 1262.

[¶ 21] Considering the entire act pertaining to the Hawk Springs Reservoir *in pari materia,* it is obvious that the legislature appropriated a large sum of money and, in order to get full public benefit in exchange for the funding, required public access for recreational purposes. Wyo. Stat. Ann. § 41–2–217 provides for a "public recreation area" and the "[i]nstallation of necessary public facilities." Section 41–2–218(a)(iii) appropriated $170,000 to the Wyoming Game and Fish for construction of public facilities. By focusing on the public recreation potential for Hawk Springs Reservoir and expressly identifying "hunting, fishing and general recreation" as the purposes of the public access, the legislature clearly intended for HCCD to grant broad, as opposed to narrow or limited, public access to the area. Wyo. Stat. Ann. § 41–2–218(b)(ii)(G). Interpreting the statutes as requiring access either only to State land or only to district land would result in an inappropriately narrow interpretation of the public access provision. Accordingly, as in *Beitel* and *PAJ,* reading the "or" in its typical disjunctive sense would not fulfill the obvious legislative intent of broad public access expressed throughout the act.

[¶ 22] Further, as the State argues, there is a grammatical reason for using "or" rather than "and" in the phrase. If the legislature had used the conjunctive "and" in place of the "or," the public arguably would have had access only to lands jointly owned by HCCD

"and" the State. That interpretation would render the statute nonsensical, because no such jointly owned lands exist.

[¶ 23] In order to accomplish its purpose of providing for greater public recreational opportunities, the legislature clearly meant to require HCCD, as a condition of receiving funding for the Hawk Springs Reservoir rehabilitation project, to grant public access to all lands adjacent to the reservoir, whether held by the State or owned by the district. We therefore conclude that the clear and unambiguous language of Wyo. Stat. Ann. § 41–2–218(b)(ii)(G), when read *in pari materia* with the rest of the act, required HCCD to grant public access to all of its lands adjacent to the reservoir.

**2. Contractual Provisions Pertaining to Public Access**

[¶ 24] The legislature prohibited the release of any funds to HCCD for the reservoir project until it entered into a project agreement with DEPAD, incorporating certain specific provisions. Wyo. Stat. Ann. § 41–2–218(b)(ii). One of the provisions the parties were required to incorporate into the project agreement was the right of public access to HCCD land, discussed above. The project agreement included the following paragraph pertaining to public access:

> 12. It is further agreed that THE DISTRICT will not deny right of access to the general public, for recreational purposes, to Hawk Springs Reservoir and adjacent public lands designated for recreational use, after completion and acceptance of the reservoir and appurtenant works.

[¶ 25] Our oft-stated procedure for interpreting contracts was reiterated in *Fox v. Wheeler Electric, Inc.*, 2007 WY 171, ¶ 10, 169 P.3d 875, 878 (Wyo.2007):

> The primary focus is on determining the intent of the parties to the contract. The initial question is whether the language of the contract is clear and unambiguous. If it is, then the trial court determines the parties' intent from the contract language alone. It does not consider extrinsic evidence, although it may consider the context in which the contract was written, including the subject matter, the purpose

of the contract, and the circumstances surrounding its making, all to help ascertain what the parties intended when they made the contract. The trial court then enforces the contract in accordance with the plain meaning its language would be given by a reasonable person. All of these issues-deciding whether a contract is unambiguous, determining the parties' intent from the unambiguous language, and enforcing the contract in accordance with its plain meaning-involve questions of law for the trial court. When we undertake *de novo* review of the trial court's conclusions of law, we follow the same familiar path. *See Double Eagle Petroleum & Mining Corp. v. Questar Exploration & Production Co.*, 2003 WY 139, ¶¶ 7–8, 78 P.3d 679, 681–82 (Wyo.2003), *and cases cited therein*.

*See also Ecosystem Resources, L.C. v. Broadbent Land & Resources, L.L.C.*, 2007 WY 87, ¶¶ 9–11, 158 P.3d 685, 688 (Wyo.2007).

[¶ 26] The appellants argue that Paragraph 12 of the project agreement does not allow public access to HCCD lands adjacent to the reservoir because those lands are not "public lands." The State recognizes the problem created by the use of the term "public lands" in the agreement, stating that it is "unfortunate" that the project agreement language failed to mirror the statutory language.

[¶ 27] Our case law is clear that, in interpreting contracts, we must take into account relevant statutes. In *Bjork v. Chrysler Corp.*, 702 P.2d 146 (Wyo.1985), we considered the effect of a release negotiated between one of several tortfeasors and the injured party. This Court ruled that the release language had to be interpreted in the context of Wyoming's Right to Contribution Among Joint Tortfeasors Act, Wyo. Stat. Ann. §§ 1–1–110 through – 113 (1977). *Id.* at 151. *See also Bentley v. Director of the Office of State Lands and Investments*, 2007 WY 94, ¶¶ 18–22, 160 P.3d 1109, 1115–16 (Wyo.2007) (interpreting installment contract for sale of State land in accordance with relevant statutes).

[¶ 28] In *Bjork*, we considered the relevant statutes in interpreting the release even

though there was no indication that the release specifically referred to the statute. *See also Century Ready–Mix Co. v. Lower & Co.,* 770 P.2d 692, 696 (Wyo.1989) ("statutory provisions become a part of the bargain contemplated by the parties in Wyoming as though the statute[s] actually were included in the terms"). Here, the project agreement expressly referred to the statutes providing funding for the rehabilitation of the Hawk Springs Reservoir, making the rationale for interpreting this agreement in the context of the statutes even stronger. The project agreement recitals specifically recognized that the statutory enactment was the impetus for the rehabilitation project and the execution of the agreement. Employing phraseology from our typical rules of contract interpretation, the statutes pertaining to the Hawk Springs Reservoir rehabilitation form part, if not most, of the circumstances surrounding the agreement's creation.

[¶ 29] We must, therefore, interpret the project agreement in light of the statutes. The project agreement provided that HCCD would "not deny right of access to the general public, for recreational purposes, to Hawk Springs Reservoir and adjacent public lands designated for recreational use." The agreement does not define "public lands designated for recreational use" and HCCD maintains that its lands, including the disputed Section 9, are not public lands. As we stated above, however, Section 41–2–218(b)(ii)(G) required HCCD, as a condition of receiving funding for the project, to provide public access to all of its lands adjacent to the reservoir. The statute had the practical effect of making HCCD lands adjacent to the reservoir "public lands," at least for recreation purposes. Thus, the clear language of the agreement, when interpreted in accordance with the relevant statutes, provided that HCCD was required to grant public access to its lands adjacent to the reservoir.

[¶ 30] Our interpretation of the plain language of the project agreement is buttressed by the fact that DEPAD did not have the legal authority to enter into a contract that did not incorporate the statutorily required provisions. State agencies can exercise only those powers authorized by statute. *Natrona County School Dist. No. 1 v. Ryan,* 764 P.2d 1019, 1035 (Wyo.1988). *See also K N Energy, Inc. v. City of Casper,* 755 P.2d 207, 210–11 (Wyo.1988). A corollary of the rule is that, when a statute provides a particular manner in which a power may be executed, the agency may not exercise its power in a different way. *Town of Worland v. Odell & Johnson,* 79 Wyo. 1, 16–17, 329 P.2d 797, 802–03 (1958). Any action taken by an agency without authority is ultra vires and void. *Id.* at 803. Accordingly, when interpreting contracts involving State agencies, we must, if possible, interpret them in a manner to comply with the law. *Tri–County Elec. Ass'n, Inc. v. City of Gillette,* 584 P.2d 995, 1005–06 (Wyo.1978).

[¶ 31] If we were to interpret the project agreement as advocated by appellants, the agreement would violate the statutes which expressly required HCCD to grant public access to its lands adjacent to the reservoir. Interpreting the project agreement to comply with DEPAD's statutory authority, it is clear that Section 41–2–218 required DEPAD and HCCD to enter into a contract guaranteeing public access to district lands. The contractual language "public lands designated for recreational use" must, therefore, be interpreted to include the adjacent HCCD property.

[¶ 32] With that said, however, we recognize the potential for future problems resulting from the project agreement's failure to mirror the statutory language. This case, therefore, presents a classic scenario where we should use our equitable power of reformation to correct the project agreement's failure to express fully the obvious intent of the legislature and the parties. Reformation emanates from the maxim that "equity treats that as done which ought to have been done." *Hutchins v. Payless Auto Sales, Inc.,* 2002 WY 8, ¶ 19, 38 P.3d 1057, 1063 (Wyo.2002). The remedy is appropriate when a written instrument does not accurately memorialize the agreement of the parties. *Id.*

[A] court acting in equity may reform a written instrument upon clear and convincing evidence of the following elements: (1) a meeting of the minds-a mutual under-

standing between the parties-prior to the time a writing is entered into, (2) a written contract, or agreement, or deed (3) which does not conform to the understanding, by reason of mutual mistake.

*Id. See also W.N. McMurry Construction Co. v. Community First Insurance, Inc. Wyoming,* 2007 WY 96, ¶ 18, 160 P.3d 71, 77 (Wyo.2007).

[¶ 33] Sections 41–2–216 through –218 clearly establish that the parties had a mutual understanding prior to execution of the project agreement. The release of State funds to HCCD and the completion of the rehabilitation of the reservoir and associated systems in accordance with the statutes provide additional support that the statutes reflected the parties' mutual understanding. The project agreement was in writing and, although it is properly interpreted to be consistent with the statute, the contractual language does not fully conform to the parties' mutual understanding, as reflected in the statutes. Thus, we remand to the district court for reformation of the project agreement language to conform more closely to Wyo. Stat. Ann. § 41–2–218(b)(ii)(G) (now renumbered as Wyo. Stat. Ann. § 99–99–218(b)(ii)(G)).

### 3. Legal Description

 [¶ 34] Next, we consider HCCD's argument that the public access provision is void because the area encumbered is not delineated by a specific legal description. Wyo. Stat. Ann. § 34–1–141 was originally adopted in 1981, and was in effect when the Hawk Springs Reservoir legislation was passed and the project agreement was executed. It states in relevant part:

(a) Except as provided in subsection (c) of this section, easements across land executed and recorded after the effective date of this act which do not specifically describe the location of the easement are null and void and of no force and effect.

(b) Except as provided in subsection (c) of this section, agreements entered into after the effective date of this act which grant the right to locate an easement at a later date and which do not specifically describe the location of the easement are null and void.

(c) For purposes of this act [section] an easement or agreement which does not specifically describe the location of the easement or which grants a right to locate an easement at a later date shall be valid for a period of one (1) year from the date of execution of the easement or agreement. If the specific description is not recorded within one (1) year then the easement or agreement shall be of no further force and effect.

(d) For purposes of this act [section] the specific description required in an easement shall be sufficient to locate the easement and is not limited to a survey.

Wyo. Stat. Ann. § 34–1–141 (LexisNexis 2005).

[¶ 35] Section 41–2–218(b)(ii)(G) provided for public access to the reservoir proper and "all adjacent lands owned by the district." The project agreement contained a legal description of the reservoir location [6] but it did not include a specific legal description of the adjacent lands subject to public access.

[¶ 36] Section 34–1–141(d) states that a legal description from a survey is not required so long as the description is sufficient to locate the easement. The question for our determination, then, is whether the description of the lands "adjacent" to the reservoir is sufficient to locate property encumbered by the public access interest. As statutory and contract interpretation principles make clear, the plain and ordinary meaning of the words governs. "Adjacent" is defined as "nearby" or "having a common endpoint or border." *Webster's Ninth New Collegiate Dictionary* 56 (1991). *See also Board of County Commissioners of the County of Laramie v. City of Cheyenne,* 2004 WY 16,

---

**6.** The legal description of the reservoir in the project agreement apparently included some property that was not covered by water. We know this because the legal description of the reservoir location included the east half of Section 9, but the southeast quarter of Section 9, which was included in the contract for deed between HCCD and Phase 23, contains most of the State improvements.

**318**

¶¶ 20–31, 85 P.3d 999, 1005–09 (Wyo.2004) (interpreting the terms "adjacent" and "contiguous" in annexation statutes). We conclude that the plain meaning of the term "adjacent" is sufficiently definite to allow the encumbered property to be located.

[¶ 37] *Markstein v. Countryside I, L.L.C.,* 2003 WY 122, ¶¶ 44–45, 77 P.3d 389, 402 (Wyo.2003) presented a problem similar to the one here. In *Markstein,* the owners of the servient estate argued that an agreement for a fishing rights easement was void because it did not contain a specific legal description of the area encompassed by the easement in accordance with Wyo. Stat. Ann. § 34–1–141. We ruled that the agreement was not void because it provided "that the rights involved are to be used within a particular region of the servient estate" and there was "a specific legal description of this land attached as an exhibit to the agreement." The agreement also incorporated sketch maps to denote the area of land involved. *Id.,* ¶ 45, 77 P.3d at 402.

[¶ 38] *Markstein* indicates that the type of description necessary to satisfy the statute will depend on the nature of the encumbrance. Obviously, a fishing easement is different from a road easement because more varied lands will be used to fulfill the dominant owner's right. In the context of a fishing easement, a more general description of the areas encumbered will be sufficient. Considering that the project agreement included a legal description of the reservoir, and that the nature of the public's recreation interest is such that it will be used over a broad area adjacent to the reservoir, the rationale employed in *Markstein* reinforces our conclusion that the description of all lands "adjacent" to the reservoir is sufficient to locate the encumbrance.

[¶ 39] An additional reason exists to reject the appellants' position. It is a basic tenet of statutory construction that a specific statute will control over a general statute covering the same subject. *See, e.g., Coffinberry v. Board of County Commissioners of the County of Hot Springs,* 2008 WY 110, ¶ 7, 192 P.3d 978, 980 (Wyo.2008). Here, the specific statute required public access to HCCD lands adjacent to the Hawk Springs Reservoir (Wyo.Stat.Ann. § 41–2–218), while a general statute required that a specific description be included in any agreement to grant an easement (Wyo.Stat.Ann. § 34–1–141). If we were to rule that the public does not have a right to access because the parties did not specifically describe the lands burdened by the right in accordance with Wyo. Stat. Ann. § 34–1–141, we would be undermining the legislature's clear intent that, by appropriating substantial funds for the rehabilitation of the Hawk Springs Reservoir, it required perpetual public access to all HCCD land adjacent to the reservoir. That result is not supported by the language of the statute or the contract, or by our precedent. We find no error in the district court's resolution of this issue.

### 4. Rule Against Perpetuities

[¶ 40] The appellants also argue that the right to public access is void because it violates the rule against perpetuities. Wyo. Const. art. 1, § 30 states: "Perpetuities and monopolies are contrary to the genius of a free state, and shall not be allowed." The rule against perpetuities was codified by the legislature at Wyo. Stat. Ann. § 34–1–139, which provides in relevant part:

(a) No interest in real or personal property shall be good unless it must vest not later than twenty-one (21) years after some life in being at the creation of the interest and any period of gestation involved in the situation to which the limitation applies.

The policy behind the rule against perpetuities is to encourage alienability of property. *See McGinnis v. McGinnis,* 391 P.2d 927, 932–33 (Wyo.1964). The rule forbids the protracted suspension of the right to alienate property by voiding interests that will not vest within the statutory term. Wyo. Stat. Ann. § 34–1–139.

[¶ 41] The rule against perpetuities does not apply when the interest has already vested. *Williams v. Watt,* 668 P.2d 620, 633 (Wyo.1983). *See also Hartnett v. Jones,* 629 P.2d 1357, 1361–62 (Wyo.1981). Here, the public access interest vested upon adoption of the statutes and project agreement.

There are no contingencies or other provisions limiting the public's right in the future. Moreover, the alienability of the property is not compromised by the public access provision. The fact that Phase 23 and HCCD entered into a contract for deed for 40 acres of the property encumbered by the public access interest is proof of the alienability of the property. We conclude, therefore, that the rule against perpetuities does not operate to void the public access provision.

## 5. Bona Fide Purchaser

■ [¶ 42] Phase 23 claims that it should not be bound by the public access interest because the interest is not a matter of public record and it was a bona fide purchaser. It relies upon Wyo. Stat. Ann. § 34–1–120 in support of its position:

Every conveyance of real estate within this state, hereafter made, which shall not be recorded as required by law, shall be void, as against any subsequent purchaser or purchasers in good faith and for a valuable consideration of the same real estate or any portion thereof, whose conveyance shall be first duly recorded.

[¶ 43] We ruled in *Bentley*, ¶¶ 42–43, 160 P.3d at 1120–21, that Wyo. Stat. Ann. § 34–1–120 does not apply to executory contracts because they do not fall within the applicable definition of a "conveyance" in Wyo. Stat. Ann. § 34–1–102.[7] Under its contract for deed, Phase 23 simply has an equity interest in the property and will not receive a conveyance of the property from HCCD until the contract is fully performed. Because the contract is executory, there has been no conveyance of the property and Wyo. Stat. Ann. § 34–1–120 provides no remedy to Phase 23.

■ [¶ 44] The district court articulated an additional basis for rejecting Phase 23's claim under Wyo. Stat. Ann. § 34–1–120. It concluded that Phase 23 was not a "bona fide purchaser," or, in the language of the statute a purchaser "in good faith." To prevail un-

der Wyo. Stat. Ann. § 34–1–120, Phase 23 was required to establish that it was a bona fide purchaser, defined as: "(1) a purchaser in good faith; (2) for a valuable consideration, not by gift; (3) with no actual, constructive or inquiry notice of any alleged or real infirmities in the title; and (4) who would be prejudiced by the cancellation or reformation." *Bentley*, ¶ 40, 160 P.3d at 1120, quoting *Grose v. Sauvageau*, 942 P.2d 398, 402 (Wyo.1997).

[¶ 45] Phase 23 argues that, under our ruling in *Grose*, it was a bona fide purchaser. The Groses received a quitclaim deed from the record property owner, but it contained numerous technical defects and was not recorded in the public record. *Grose*, 942 P.2d at 400. After receiving the deed, the Groses constructed improvements on the property. Ms. Sauvageau, who owned the neighboring property, searched the property records which, of course, did not include the Groses' deed. She then contacted the record owner and obtained a quitclaim deed. After recording her deed, she demanded that the Groses vacate the property. They refused on the basis of their quitclaim deed. Ms. Sauvageau then filed an action to quiet title to the property and eject the Groses. *Id.* at 400–01. Ms. Sauvageau claimed that, under Wyo. Stat. Ann. § 34–1–120, the Groses' quitclaim deed was void as against her because it was not recorded and she was a bona fide subsequent purchaser. The Groses argued that their occupation of the property should have put Ms. Sauvageau on inquiry notice that they owned the property. We ruled, under the circumstances presented there, that Ms. Sauvageau's investigation of the property ownership in the public record was sufficient and the Groses' quitclaim deed was void as to her. *Id.* at 402–03.

[¶ 46] The situation presented here is readily distinguishable from *Grose* because the Buchhammers, who were the only mem-

---

7. Wyo. Stat. Ann. § 34–1–102 states:

The term "conveyance", as used in this act, shall be construed to embrace every instrument in writing by which any estate or interest in real estate is created, alienated, mortgaged or assigned, or by which the title to any real estate may be affected in law or in equity,

except wills, leases for a term not exceeding three (3) years, executory contracts for the sale or purchase of lands, and certificates which show that the purchaser has paid the consideration and is entitled to a deed for the lands, and contain a promise or agreement to furnish said deed at some future time.

bers of Phase 23, had actual knowledge of the public's claim of access. They were members of HCCD when the project agreements were executed and did not object to HCCD's petitions for district court approval of the project agreements. In addition, Mr. Buchhammer, as an employee of HCCD, was intimately involved in the dispute over public access prior to the limited liability company's entry into the contract for deed. Under these circumstances, Phase 23 was not a bona fide purchaser under Wyo. Stat. Ann. § 34–1–120. We note, however, that after the project agreement is reformed to conform to the statutory provision for public access, it would be prudent for the State to record an instrument as a way of avoiding future notice issues.

[¶ 47] We need not consider the remainder of the appellants' issues because our rulings contained herein are dispositive.

### CONCLUSION

[¶ 48] The statutes providing for rehabilitation of the Hawk Springs Reservoir, Wyo. Stat. Ann. §§ 41–2–216 through –218, specifically required HCCD to grant public access to its lands adjacent to the reservoir. When the project agreement is interpreted in the context of the statutes, as it must be, it unambiguously provides for public access. However, because the contractual language does not mirror the statutory language, we remand for application of the equitable power of reformation to conform the contractual language to the statutes. We further conclude that, as a matter of law, the rule against perpetuities does not apply to the public access interest because it is fully vested.

[¶ 49] Phase 23 is also bound by the public access interest even though it was not recorded in the public record. Phase 23 is not entitled to relief under the recording statute because it has not received a conveyance of property from HCCD and it had actual notice of the public's access interest, precluding it from being a bona fide purchaser.

[¶ 50] Affirmed and remanded for reformation of the project agreement consistent with this decision.