*Sec'y Vermont Agency of Agriculture, Food & Markets v. Bushee*, No. 681-11-16 Wncv (Teachout, J., June 7, 2017).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

**SUPERIOR COURT**                                        **CIVIL DIVISION**
**Washington Unit**                                      **Docket # 681-11-16 Wncv**


**SECRETARY, VERMONT AGENCY OF**
**AGRICULTURE, FOOD & MARKETS,**
    **Plaintiff**


    **v.**


**JOHN BUSHEE, JR.,**
    **Defendant**


## DECISION

Plaintiff the Vermont Agency of Agriculture, Food & Markets seeks judgment for monetary fines and penalties based on an administrative determination that Defendant John Bushee, Jr., violated a previously issued Assurance of Discontinuance. An evidentiary hearing was held on April 18, 2017. Plaintiff was represented by Attorney Neal D. Ferenc, and Defendant John Bushee, Jr., represented himself. The parties submitted post-hearing memoranda.


### Facts

Mr. Bushee maintains a red deer herd in Pownal that is subject to regulation by the Agency of Agriculture under Vermont's Rules Governing Captive Cervidae. In March of 2014, he was served a Notice of Violation and requested a hearing. As a result, the parties had a pre-hearing meeting at the Pownal site where the herd was located. For an inspection, the animals must be made available in such a way that the inspector can look at each deer and inspect their official metal tags and farm tags and reconcile them with an inventory listing of all animals and tags. A few of the deer could not be inspected in July of 2014, but as a result of the session, the parties entered into an agreement and Mr. Bushee signed an Assurance of Discontinuance. The outcome was that he was assessed an administrative penalty of $250 on each of two counts of violation, but the penalties were suspended pending successful completion of the 2015 annual physical herd inspection in two respects: submission of complete herd inventory, and presentation of all the animals for the annual physical herd inventory and reconciliation. Upon satisfactory completion of the 2015 annual herd inventory and reconciliation, the penalties were to be dismissed. If he failed to follow any terms, "the suspended penalty amounts shall be due and payable, after notice and opportunity for hearing on the purported breach(es) of paragraph 10."

The 2015 inspection took place on December 8, 2015, a prearranged date, at the Pownal site, conducted by Darryl Kuehne, who had been well known to Mr. Bushee for many years as the herd inspector. The barn was full of hay and the animals were not assembled in a fashion

that each could be inspected. The inspector knew that he would have to return, but he does not know what he told Mr. Bushee. The Agency's record of the event says its purpose was to complete the physical herd reconciliation "as per the requirements set forth in the 2015 AOD." The record contains specific details about missing tags and plans to put on new tags at a later date. It does not specify that there would be a follow-up visit or show that Mr. Bushee "failed" the inspection. The entry for this inspection was not entered into Agency records until February 11, 2016. There was neither a dismissal of the AOD and its penalties nor an imposition of the penalties for failure to complete the 2015 herd inspection reconciliation as required under the AOD.

On March 16, 2016, Mr. Bushee contacted the inspector to arrange an inspection. On March 21st, the inspector and Mr. Bushee agreed that the inspector would do a site inspection on March 30th. When he arrived, the deer were not at all in an area where they could be inspected individually and a proper reconciliation completed. Mr. Bushee did provide inventory information. The record is silent as to whether this was the 2016 inspection or a follow-up and finish of the 2015 inspection. Nothing was communicated between the parties on this point. It appears that they had different understandings, and that the Agency considered it a follow-up whereas Mr. Bushee considered it the 2016 inspection.

On April 20, 2016, the Agency issued a Notice of Violation which Mr. Bushee received on May 12, 2016. The Agency assessed administrative penalties as follows: $1,000 for noncompliance with the AOD; imposition of the $250 penalty previously suspended; and an administrative penalty of $50 per day until substantial compliance is achieved. Mr. Bushee had notice of the right to request a hearing within 15 days of receipt of the notice. He did not do so, and a Final Order was issued on July 5, 2016, which specified that he had 30 days to appeal to the superior court. He did not do so. In November of 2016, the Agency commenced this lawsuit to enforce the penalties provided for in the final order.

## Conclusions of Law

Although the court took testimony on April 18, 2017, the court was not conducting a de novo hearing that otherwise might have taken place if Mr. Bushee had requested a hearing within 15 days of the 2016 Notice of Violation. There is no question that Mr. Bushee failed to request a hearing and failed to appeal the Final Order, and thus waived the opportunities that would have been available to him to contest the violations.

The purpose of the evidence was to provide background factual context for the proceedings in connection with Plaintiff's claim for enforcement of the Agency's Final Order. The court's review is in the nature of a record review of administrative proceedings to determine the propriety of enforcement.

There is no question that Mr. Bushee violated the rules on March 30, 2016 when he failed to make the animals in the herd available for individual inspection as he was required to do. The $1,000 administrative penalty for a new violation was proper and is enforceable.

2

Similarly, the administrative penalty of $50 per day was justified, and is enforceable for the period of August 15, 2016 (the expiration of the 30-day appeal period) to November 17, 2016 (the commencement of the collection action). This is 94 days x $50 per day = $4,700.

The record does not establish, however, that the Agency had the authority under the AOD to assess the $250 suspended penalty for 2015 for the first time in April of 2016, after the 2016 inspection was complete. The terms of the AOD provided that by the end of 2015, the suspended penalty would either be dismissed or invoked, depending on what happened with the 2015 inspection. The 2015 inspection took place on December 8, 2015. There is no record that it was unsatisfactory, that Mr. Bushee was told it was unsatisfactory, or that the penalty would be imposed. There is no record that Mr. Bushee was told that the March 30, 2016 inspection, which he requested, was in any way related to an extension of the 2015 inspection. The entry regarding the December 8, 2015 inspection was not made until February 11, 2016, and states that it was done "to complete" the 2015 inspection, and does not provide for any continuation or follow-up of the 2015 inspection, nor does it state that the suspended penalty should be imposed.

For the Agency to retroactively decide that the March 30, 2016 inspection was a continuation of the 2015 inspection and retroactively decide to impose the previously suspended penalty amounts was abusive and outside its authority, and will not be enforced by the court.

The Agency's civil administrative enforcement authority regarding captive cervids appears at 6 V.S.A. § 1164 and, more generally, 6 V.S.A. §§ 15–17. Where that authority leads to a civil penalty, and the civil penalty goes unpaid, the Agency may file a "civil collection action in . . . superior court." 6 V.S.A. § 17(a). The Agency's position in this case is that the court is limited exclusively to enforcing the final decision imposing the administrative penalty because Mr. Bushey failed to appeal. However, nothing in the statutory regime contemplates the unilateral re-imposition of a penalty that, by the terms of the AOD and the facts of the case, had been resolved, particularly as regards annual inspection and record-keeping activities as in this case. The Agency simply lacked the authority to do what it did.

With respect to the 2015 penalty, the Agency's action was ultra vires and therefore void, regardless that Mr. Bushey failed to appeal. "[A] governmental action may be challenged at any time, as ultra vires, when the action itself is beyond the jurisdiction or authority of the administrative body to act." *Sold, Inc. v. Town of Gorham*, 868 A.2d 172 (Me. 2005); accord *Horse Creek Conservation Dist. v. Wyoming*, 221 P.3d 306, 316 (Wyo. 2009); *Kranz v. Meyers Subdivision Property Owners Assoc., Inc.*, 969 N.E.2d 1068, 1075 (Ind. Ct. App. 2012).

The Vermont Supreme Court has ruled that this principle is inapplicable in limited circumstances. Particularly, it has explained in detail that, ultra vires or not, zoning decisions are not subject to collateral attack. *Levy v. Town of St. Albans Zoning Bd. of Adjustment*, 152 Vt. 139, 143 (1989). That, however, is because 24 V.S.A. § 4472 implements a policy of repose and expressly forbids it. *Id.*; see also 24 V.S.A. § 4472(d) ("Upon the failure of any interested person to appeal . . ., all interested persons affected shall be bound by that decision . . . and shall not thereafter contest, *either directly or indirectly*, the decision or act, provision, or decision of the panel in any proceeding, including any proceeding brought to enforce this chapter." (emphasis added)).

3

Here, there is no similar repose provision.  The Agency merely has statutory authority to bring a collection action when a penalty goes unpaid.  The Agency lacked authority to re-impose the 2015 penalty, doing so was void, and the court will not enforce it.

Accordingly, Plaintiff is entitled to judgment against Defendant in the amount of $5,700.00 plus service costs of $59.11.  Interest shall accrue at the legal rate of 12% per annum beginning 30 days after the entry of judgment.

**Order**

For the foregoing reasons, judgment will be entered for the Agency for $5,759.11.


Dated at Montpelier, Vermont this __ day of June 2017.


_____
Mary Miles Teachout,
Superior Judge